700 P.2d 27

**Steven G. PHILLIPS, Petitioner-Appellant,**

v.

**The STATE of Idaho, Respondent-Respondent.**

**No. 15433.**

Supreme Court of Idaho.

April 26, 1985.

G. La Marr Kofoed, Fruitland, for petitioner-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent-respondent.

DONALDSON, Chief Justice.

This is an appeal from a post-conviction relief proceeding. On the night of New Year's Eve, January 1, 1983, petitioner, Phillips broke into the Iron Skillet Cafe in Weiser, Idaho. He stole a small amount of goods along with the money on hand, a two-dollar bill. He was arrested and charged with first degree burglary to which he pled guilty. A pre-sentence report was ordered which indicated that Phillips had been involved in seven burglaries and had served time in a correctional institution in Oregon.

On April 4, 1983, a sentencing hearing was held during which Phillips' counsel requested that Phillips be put on probation only. The court questioned Phillips and his sister and his employer, both of whom spoke in support of him. The trial court sentenced Phillips to the Idaho State Board of Correction for a maximum period of 15 years, but suspended the sentence and placed him on probation for five years. As conditions of the probation, Phillips was ordered to pay restitution to the Iron Skillet, to complete his G.E.D., to participate in counseling imposed by the probation department, to pay a $300 fine to the State and to serve 90 days in the county jail with work-out privileges.

On May 6, 1983, Phillips appeared before the court on a probation violation charge. The State alleged that on the evening of April 13, 1983, Phillips had brought marijuana into the county jail and smoked it. Petitioner denied the allegations and a hearing was set for May 9. At this hearing Phillips admitted to using the marijuana. The court revoked his probation but also reduced the sentence to an indeterminate period not to exceed five years.

On September 13, 1983, with the assistance of another prison inmate, Phillips filed a petition for post-conviction relief. He alleged that (1) the court forced him to plead guilty; (2) his counsel was ineffective because the counsel failed to arrange a favorable plea bargain, neglected to insure a proper probation hearing within the specified time and manner, and allowed Phillips to enter a guilty plea and revocation of probation when Phillips was obviously pleading guilty under duress; and (3) the prosecutor was aware that his guilty plea was not knowingly and voluntarily made

and coerced Phillips by threats of long confinement. On October 3, 1983, the trial court filed its order of intention to dismiss the petition because it contained only unsupported allegations and because Phillips failed to set forth sufficient facts to constitute relief under I.C. § 19–4901. Between October 3, 1983 and February 15, 1984, petitioner filed various motions, including a motion for production of certain documents, all of which were denied by the trial court. On February 15, 1984, the trial court entered its order dismissing the petition for relief. The court found that the petition contained "mere conclusory allegations without supporting facts under oath" and that Phillips had sufficient time within which to file "additional affidavits setting forth facts to support his mere conclusions, but the Petitioner chose to ignore the opportunity." This appeal followed.

The first issue presented by this appeal is whether the trial court erred in concluding that Phillips' petition did not raise any material issues of fact and in summarily dismissing Phillips' petition.

■ I.C. § 19–4906 provides in pertinent part:

> "(b) When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post-conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. The applicant shall be given an opportunity to reply within 20 days to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or, direct that the proceedings otherwise continue. Disposition on the pleadings and record is not proper if there exists a material issue of fact."

Such summary dismissal is appropriate even if the petitioner's alleged facts are uncontroverted by the State. *Clark v. State*, 92 Idaho 827, 830, 452 P.2d 54, 57 (1969). This is true because while the underlying facts must be regarded as true, the petitioner's conclusions need not be so accepted. *Kraft v. State*, 100 Idaho 671, 674, 603 P.2d 1005, 1008 (1979).

In his petition, Phillips asserted as grounds for relief the unsubstantiated allegations that (1) the court forced him to plead guilty; (2) he was denied effective assistance of counsel; and (3) the prosecution forced him to plead guilty. In its answer to Phillips' petition, among other things, the State pointed out that Phillips' counsel was effective in obtaining a suspended judgment for his conviction of first degree burglary despite his prior felony record and incarceration. Additionally, the State asserted that the transcript reflects that Phillips freely and voluntarily pled guilty to both the initial charge and the parole violation and that there was no evidence to indicate force or coercion by the court or prosecutor. Finally, the State adds that Phillips' counsel, when advised by the court that it would be two months before the court could hold a hearing on the parole violation, consulted with Phillips about the interim length of incarceration and instead arranged for a hearing a few days later.

■ The transcripts of the initial sentencing hearing and of the probation violation hearing are replete with inculpatory statements: for example Phillips stated that the burglary was stupid and ridiculous, that when he drinks he gets that way, and that he doesn't burglarize when he is straight. Phillips' responses appear very candid and open. There is no indication anywhere in the record that Phillips' plea was not knowing and voluntary. Further, relief cannot be granted upon allegedly inadequate assistance of counsel where there is no evidence of prejudice resulting from the activity or lack of activity of counsel. *Drapeau v. State*, 103 Idaho 612, 615, 651 P.2d 546, 549 (Ct.App. 1982). Phillips has presented no evidence that he has been prejudiced by his counsel in any way. Therefore, we hold that the trial court properly concluded that Phillips'

allegations raise no issue of material fact. Summary dismissal was proper.

■ Phillips next argues that he was unable to gather facts because the trial court denied his motion for production of documents. However, I.C.R. 57(b) provides that "the provisions for discovery in the Idaho Rules of Civil Procedure shall not apply to the [post-conviction relief] proceedings unless and only to the extent ordered by the trial court." Thus, it was within the trial court's discretion whether to grant Phillips' request. Absent an abuse of that discretion, we must uphold the trial court's decision. *See State v. Powers*, 100 Idaho 290, 291, 596 P.2d 802, 803 (1979).

■ In Phillips' motion, he requested transcripts of the preliminary hearing and the probation revocation hearing, the pre-sentence report and a copy of any and all motions in the record. The State responded to the motion by stating that it had no objection to a court order directing the clerk to send copies of all the records to Phillips. The trial court, however, denied Phillips' request. We hold that the denial was not an abuse of discretion for the following reasons. First, the trial court determined that Phillips did not comply with I.C. § 19–4904 which requires a showing of indigency before the court will provide counsel and assistance. Second, since Phillips waived his right to a preliminary hearing, there was no preliminary hearing transcript to be produced. Also, as stated above, there is nothing in the probation hearing transcript or the record to support Phillips' allegations. Finally, prior to dismissal, the trial court reviewed the entire record and found nothing to support Phillips' allegations. The only document that might have been of value to Phillips was the pre-sentence report. That document is not before us in the record and Phillips has not requested it to be part of the record.

Accordingly, the judgment of the trial court is affirmed.

No costs or attorney fees on appeal.

SHEPARD, BAKES and HUNTLEY, JJ., concur.

HUNTLEY, Justice, specially concurring.

While I concur in the result reached by the majority, I find the points raised by Justice Bistline's dissent compelling. However, Justice Bistline's dissent is not so much a dissent from the majority opinion as a discussion of issues neither raised nor briefed by the parties nor addressed by the majority of this Court.

I regret that defendant's appellate counsel did not raise many of the issues addressed by Justice Bistline. Also, I think it unfortunate that Justice Bistline's lucid discussion falls under the rubric of a "dissent" because that implies that the majority considered the issues he discusses and reached a contrary position. This is not the case. The majority may well agree with Justice Bistline's position on other questions if called upon to resolve *those* issues in a further appeal.

BISTLINE, Justice, dissenting.

Counsel who regularly represent those who run afoul of the law, on reading the Court's opinion will see some shortcomings in the administration of criminal justice. However, there is even more amiss than that which surfaces in the opinion. The Court's opinion does note that Phillips had an attorney when he was first sentenced to 15 years (execution suspended) on April 4, 1983, and also when a month later the sentence was modified to a five-year term, to commence immediately. This was done because of the charged probation violation, which was not proven. Phillips, who had been working out and returning to lock-up, admitted to puffing on one joint of marijuana proffered to him by a cellmate as a cure for a headache which Phillips testified to having been brought on by work exposure to paint and turpentine.

The appeal record includes a transcript of both sentencing hearings, and the acceptance of his guilty plea. Phillips did not have that transcript when he was attempting his own pro se post-conviction representation. It was only provided after the

same judge who had sentenced him [1] summarily denied the post-conviction proceeding, at which time any use which he could have made of it was long since gone. Phillips, of course, was not exactly a free agent during any of this time, but was incarcerated in the penitentiary.

Contrary to this Court's assertion that Phillips' allegations are unsubstantiated, these are not just mere pleading allegations, but statements which are sworn to before a notary public whose name appears to be Warren D. Marks. The inartfully drawn, but verified, petition was responded to by the prosecutor and therein alleged that "there was no force or coercion used to induce the defendant to admit the violation of probation." This denial was not sworn to. Moreover, it did not respond to the further sworn statement Phillips made as to his plea of guilty to the burglary charge. In short, the petition was a verified statement, and Phillips was entitled to testify in support of it, and in front of a district judge who would be entirely neutral and disinterested. Not knowing what to make of the statement in the Court's opinion as to the State's assertion "that the transcript reflects that Phillips freely and voluntarily plead guilty to both the initial charge and the parole violation ...," I pass it by. Having read the State's response a number of times, I remain unable to find therein any mention of a transcript. I do not deduce from this record that a transcript of the two sentencing hearings was available to anyone until *after* Phillips appealed from the summary denial of his petition. 'Twas on the 14th day of October that the clerk of the court filed Phillips' motion that he be provided that exact transcript. The State's response was filed over two weeks earlier on September 28. Again, something is amiss.

This Court justifies the denial of a transcript because of non-compliance with I.C. § 19–4904. This is most ironic. Phillips, a slightly educated 20-year-old from the confines of the penitentiary, in his quest for a post-conviction hearing is being short-circuited at every level of the judiciary. Rather than barraging him with § 19–4904, with which he would not have any familiarity, the Court should first concern itself with another statute of far greater importance. I.C. § 19–853 absolutely mandates a district judge to "clearly inform" a person who has commenced a post-conviction of his right to have counsel, and the right of a needy person to be represented by an attorney at public expense. The duty so placed on the district judge is not to be taken lightly; it is not to be ignored; it is further required that it be in writing. Section 19–853(e), or otherwise recorded— which as here applied means that the district judge would execute and transmit a writing which provides the required information, or that the court order the defendant to be brought before him where a court reporter will record the event. Had such been done in this case, the district court would have likely learned that Phillips, who left the court room on May 9, 1983, as an indigent, and as such being then and there represented by court-appointed counsel, did not, on going forthwith to the penitentiary, evolve out of that impecunious state of affairs. At any rate, the clearly stated terms of the statute were not complied with. Accordingly, it ill-behooves this Court to excuse the actions of the district court on the basis that Phillips never made a showing of indigency. I stand aghast. The man was never offered the opportunity!

Furthermore, for several years [2] I have advocated a competency hearing be held at

---

1. In other opinions I have questioned this practice, relying upon sound authority from other courts. In this case, as appears in the Court's opinion, Phillips outright stated that the prosecutor acted in concert with the court to induce his guilty plea.

2. At least on the average of two or three times a month this Court routinely, against my vote,

grants motions of defense counsel to withdraw as counsel for appealing defendants. These motions are generally presented before assignments are made to the Court of Appeals. Hence, that court is probably more plagued than this Court with appeal briefs and arguments which are not of the quality to be of much aid in seeking a fair and just resolution.

which a defendant is clearly and forcefully informed of the implications of his choice to defend himself. The purpose of this type of hearing should be twofold: (1) to satisfy the court that the defendant is competent to understand the nature of the proceedings against him, and (2) to inform the defendant of the right he is foregoing, i.e., the right to be represented by counsel in criminal proceedings. The majority in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) clearly advocated this approach in cases where the defendant insists on conducting his own defense:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forego those relinquished benefits. *Johnson v. Zerbst,* 304 U.S., [458] at 464–465, 58 S.Ct., [1019] at 1023 [82 L.Ed. 1461] [1938], Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723–724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann,* 317 U.S. [269] at 279, 63 S.Ct. [236] at 242 [87 L.Ed. 268 (1942)].

Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedures. We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voir dire.* For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

*Id.* at 835–36, 95 S.Ct. at 2541.

Those who take the time to carefully read both the majority and minority opinions will discover that the two opinions differ only in their view of whether the state has the authority to force a defendant to accept the assistance of trained legal counsel. The majority would allow appointment of counsel against a defendant's wishes only after a hearing wherein it is determined that the defendant is not competent to conduct his own defense. The minority's view differs only in its conclusion that a defendant should at all times have a court-appointed attorney in order to insure a fair system of criminal justice under the mandate of the Sixth Amendment. The minority eloquently sets forth its reasoning as follows:

> Although we have adopted an adversary system of criminal justice, see *Gideon v. Wainwright, supra,* [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)], the pros-

---

This Court's failure to require that a competency hearing be conducted by a district court assuredly works the mischief of which Chief Justice Burger wrote in *Faretta, infra:*

> There is nothing desirable or useful in permitting every accused person, even the most uneducated and inexperienced, to insist upon conducting his own defense to criminal charges. Moreover, there is no constitutional basis for the Court's holding, and it can only add to the problems of an already malfunctioning criminal justice system.

Although, as perceived by the *Faretta* Court, there is a constitutional basis in Idaho, art 1, § 13, the problems alluded to by the Chief Justice will be greatly ameliorated by requiring the competency hearing which the *Faretta* Court declared to be mandated by *Adams v. United States ex rel. McCann, infra.* Moreover, some members of this Court might welcome the forewarning that pro se appellants in post-conviction cases would appear to have a constitutional right to present their own oral argument.

ecution is more than an ordinary litigant, and the trial judge is not simply an automaton who insures that technical rules are adhered to. *Both* are charged with the duty of insuring that justice, in the broadest sense of that term, is achieved in every criminal trial. See *Brady v. Maryland*, 373 U.S. 83, 87, and n. 2, 83 S.Ct. 1194, 1196–1197 [and n. 2], 10 L.Ed.2d 215 (1963); *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). That goal is illserved, and the integrity of and public confidence in the system are undermined, when an easy conviction is obtained due to the defendant's ill-advised decision to waive counsel. The damage thus inflicted is not mitigated by the lame explanation that the defendant simply availed himself of the "freedom" "to go to jail under his own banner...." *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (CA2 1965). The system of criminal justice should not be available as an instrument of self-destruction.

In short, both the "spirit and the logic" of the Sixth Amendment are that every person accused of crime shall receive the fullest possible defense; in the vast majority of cases this command can be honored only by means of the expressly guaranteed right to counsel, and the trial judge is in the best position to determine whether the accused is capable of conducting his defense. True freedom of choice and society's interest in seeing that justice is achieved can be vindicated only if the trial court retains discretion to reject any attempted waiver of counsel and insist that the accused be tried according to the Constitution. This discretion is as critical an element of basic fairness as a trial judge's discretion to decline to accept a plea of guilty. See *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498–499, 30 L.Ed.2d 427 (1971).

*Id.* at 839–40, 95 S.Ct. at 2543–44 (emphasis added).

What is clear from *both* opinions is that the *court* has a duty to protect the defendant's rights under the Sixth Amendment. The

majority would impose appointment of legal counsel only after a finding by the court that the defendant is not competent to conduct his own trial. The minority view differs only in its recognition that uneducated defendants should be presumed incompetent to conduct their own defense because of the intricacies of the law and the dangers of mistakes, and counsel should be required at the outset.

The record before us in the instant case conspicuously lacks any evidence of any effort by the trial court to inform Mr. Phillips of his right to be represented by an attorney or of the risks Phillips was taking in managing his own case. Moreover, the district court made no attempt to ascertain Phillips' competency to understand the nature of the proceeding he was undertaking and the dangers involved. Unlike *Faretta, supra*, where the trial court insisted on a hearing to determine competency, the record before us is clearly void of any attempt to provide a competency hearing for Phillips.

But that isn't the end of it. The transcripts of the sentencing hearing also disclose that the district court at each of the sentencing hearings wholly failed to comply with Idaho Criminal Rule 33(a)(3), a reading of which further demonstrates the amazing trifling with Phillips' rights. It reads: "Notification of right to appeal. After imposing sentence the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay costs of an appeal to apply for leave to appeal in forma pauperis." A careful review of the record reveals that the district judge never once informed Phillips of his right to appeal his sentence. I.C.R. 33(a)(3). I am shocked that an error of this magnitude can be so casually overlooked by the majority in this case. This case should be reversed on the ground that the district judge failed to exercise his duty to inform the defendant of his right to appeal under I.C.R. 33(a)(3).

When the uncounseled and totally uninformed Phillips saw his petition for postconviction relief summarily denied, he then

made an effort to appeal from that denial, and also to appeal from the final judgment of conviction and sentence which had sent him off to the penitentiary for five years. A single notice of appeal was filed. On having this brought to his attention, the district court took it upon himself to rule the notice was untimely as to the criminal conviction—which was perhaps a usurpation of the authority of this Court, which might or might not have so ruled, on ascertaining that Phillips had never been informed of his right to appeal.

### ADDENDUM

It is indeed gratifying that Justice Huntley has not only taken the time to read the foregoing, but has also seen fit to write a short response which endorses my views, but adds the "regret that defendant's appellate counsel did not raise any of the issues addressed by Justice Bistline."

My counter-regret is that the office of the Supreme Court requires a collegial obligation and effort to participate in each and every appeal, and original matter, which comes before us. This I have endeavored to do as far as humanly possible, as the last ten volumes of the Idaho Reports will bear witness. The obligation as I understand it does not merely encompass reading the briefs, but resorting to the record itself where circumstances appear to so dictate— irrespective of whether the writing of the opinion has or has not been assigned to this office. To which I may add that, since my advent on the Court, I have been consistently reminded that the five Justices are the oligarchy governing the entire statewide judicial system—a proposition which, or the extent thereof, had not been properly appreciated by us provincials. Nevertheless, I have always had at least a speaking acquaintance with Idaho case-law.

Accordingly, even before assuming the office of Justice, I was apprised of this Court's opinions in criminal matters, and in particular was impressed with the views of Justices Donaldson and Shepard expressed soon after they took office. In 1971, now almost 14 years ago, Justice Donaldson au-thored the Court's opinion in *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971). Breaking with stale precedent which had placed technicality over justice, Justice Donaldson, with Justices McQuade, McFadden and Spear joining his opinion, wrote that "the obligation of the State to see that defendant receive a fair trial is primary and fundamental." He went on to hold in that case: "In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial." In that same year, for a unanimous Court, which included Justice Shepard, Justice Donaldson adopted the Supreme Court of New Mexico's definition of fundamental error:

> "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law."

*Smith v. State*, 94 Idaho 469, 475, n. 13, 491 P.2d 733, 739, n. 13 (1971) (quoting from *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942).

In that very case, a post-conviction proceeding, as to a contention that Smith was deprived of his right of appeal because he was not informed that he had such a right, the Court observed that because no duty had been imposed on trial courts to so inform defendants, the failure to advise afforded no basis for post-conviction relief. *Id.*, 94 Idaho at 473, 491 P.2d at 737. An enlightened Court thereafter by rule prescribed the mandatory duty that trial courts so inform defendants. Justice Donaldson in his opinion also quoted with approval from *Gairson v. Cupp*, 415 F.2d 352 (9th Cir.1969), for the proposition that a trial attorney who has failed to perform the duty of informing his client of his appeal rights or protecting him by filing the notice of appeal, has "ineffectively represented

his client." *Id.*, 94 Idaho at 474, 491 P.2d at 738. In the case we review today, the record demonstrates conclusively that the district court not only failed to perform its duty to inform, but on appeal from denial of the pro se attempt at gaining a post-conviction hearing, the court appointed the very same counsel who may have ineffectively represented Phillips within the encompass of this Court's statement in *Smith.*

Three years later, in *State v. Cariaga,* 95 Idaho 900, 523 P.2d 32 (1974), where the State of Idaho claimed that the defendant Cariaga had failed to object and the brief of defendant had not raised the issue in question, at oral argument the Court ordered a supplemental brief which in turn then assigned the error. The Court reiterated the fundamental error doctrine of *Haggard,* reversed the conviction, and dismissed the charges. The *Cariaga* court was unanimous in so doing, and Justices Bakes, McFadden and McQuade joined the opinion of Justice Donaldson. Justice Shepard wrote that "the amended complaint failed to charge the appellant with having committed a crime and for this reason the charge must be dismissed." *Id.,* at 904, 523 P.2d at 36. This, as gleaned from the majority opinion, does not appear to have been an assignment of error. If that is so, then again he, too, voted on the basis of fundamental error.

In that same year, 1974, in a majority opinion authored by Justice McFadden, joined by Justices Shepard and Donaldson, the Court stated: "Even though the defendant objected to the statement made by her [Swenor's] husband, which objection was overruled by the trial court, no assignment of error is predicated on this point." *State v. Swenor,* 96 Idaho 327, 330, 528 P.2d 671, 674 (1974). Justice Bakes, joined by Justice McQuade (then in his third year on the Court), in dissent addressed fundamental error for his first time:

The majority refuses to weigh the effects of this statement and the trial court's action in overruling appellant's objection to the statement at the trial, on the ground that "no assignment of error is predicated on this point," even though that issue was discussed at length in oral argument before this Court. To overlook the constitutional rights of a criminal defendant on the tenuous ground that there was no assignment of error appears to me to be a manifest denial of due process, especially in view of that rule and other rules of appellate procedure.

*Swenor, supra,* at 332–33, 528 P.2d at 676–77 (footnote omitted).

At that point Justice Bakes discussed at length *Haggard,* following which, with extreme fervor and eloquence, he went on:

Deciding an issue *sua sponte* is nothing new to the American judicial system. Many landmark decisions have been rendered deciding issues not raised by the parties. *In Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the United States Supreme Court overruled one hundred years of jurisprudence by deciding that in diversity cases the substantive law of the state of trial must be applied, which issue had not been raised by the parties before either the lower courts or the Supreme Court. The Court also, in *Boynton v. Virginia,* 364 U.S. 454, 457, 81 S.Ct. 182, 5 L.Ed.2d 206, in order to avoid considering two broad constitutional issues which were the only questions presented by petitioner, considered and resolved a statutory issue not presented by the petition in spite of Supreme Court Rule 23(1)(c). Also, in *Pollard v. United States,* 352 U.S. 354, 359, 77 S.Ct. 481 [484], 1 L.Ed.2d 393, the Court considered certain issues raised for the first time in the brief on the merits. Likewise, in *Kilberg v. Northeast Airlines,* 9 N.Y.2d 34, 21 N.Y.S.2d 133, 172 N.E.2d 526 (1961), the New York Court of Appeals announced that in conflict-in-laws cases, it would no longer follow the law-of-the-place-of-the-tort rule. Again, the issue was not before the court. Although there is a long line of cases espousing the rule that there must be an assignment of error on a specific issue before this Court will

rule on that issue, there are also numerous cases wherein this Court has disregarded the rule. *See, State v. Webb,* 96 Idaho 325, 528 P.2d 669 (1974); *Paullus v. Liedkie,* 92 Idaho 323, 442 P.2d 733 (1968); *McLean v. City of Spirit Lake,* 91 Idaho 779, 430 P.2d 670 (1967); *Garren v. Rollis,* 85 Idaho 86, 375 P.2d 994 (1962). There have been instances wherein appellant's briefs have been submitted to this Court without any assignments of error and, at the suggestion of the office of the Clerk of the Supreme Court that such briefs did not comply with Rule 41, amended briefs have been submitted setting out assignments of error. Under Rule 54(c) of the Idaho Rules of Civil Procedure, which this Court adopted in 1958 for the purpose of promoting justice and simplifying court procedures, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." I have never been able to understand why the "interests of justice" require the trial court's to grant the relief which the facts show a party is entitled to regardless of whether he has requested it in his pleadings, and the same "interests of justice" require this Court to refuse to grant the relief to which a party is entitled because he has not demanded such relief in his pleadings on appeal, i.e., assignments of error. *While assignments of error are helpful* in having issues reasonably but not rigidly clarified in advance, *they should not become a vehicle by which this Court regresses to the 19th century technicalities* of the common law pleading system.

Further, the fact that this Court has on occasion granted relief from failure to assign points as error under the doctrine of fundamental error, or permitting oral amendments of briefs to include assignments of error, or *sua sponte,* would appear to be a violation of Article 5, Section 26 of the Idaho Constitution which requires all laws relating to courts to be general and uniform. Also, the indiscriminate application of the assignment of error rule is as much a denial of due process under the federal constitution as is the indiscriminate application of the death penalty as was recently found by the United States Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The principle is the same.

I fear that the majority's decision today is only the conclusion of round one of appellant's case. Round two will be an action under the Uniform Post Conviction Procedures Act, I.C. § 19–4901 et seq. on the ground that appellant's constitutional rights were violated because of the due process argument and on the ground of competency of counsel for failure to assign as error the obvious defect in this case. If round two proves unfruitful for the defendant, then round three will be a petition in the federal courts under 28 U.S.C.A. § 2254 to set aside the conviction. State courts often bemoan the intervention of the federal courts in state cases, but so long as highly prejudicial errors, such as the admission into evidence of the statement allegedly made by appellant's husband, remain uncorrected in state courts it is probably a good thing that federal courts are available to correct such mistakes. *Id.,* at 333–34, 528 P.2d at 677–78 (footnotes omitted) (emphasis added).

A petition for rehearing was granted following which the majority simply said, "we continue to adhere to the views expressed and the conclusion reached in our earlier opinion." Thus, for a second time, the majority eschewed the opportunity to respond to the minority view that this was indeed a case strongly calling for application of the doctrine of fundamental error. One view that this was not acceptable coming from a collegial court was expressed by Justices Bakes and McQuade who wrote that they *strongly* adhered to the views expressed in their previous minority opinion.

That which Justice Bakes wrote in *Swenor* should certainly influence him and Justice Donaldson to pause and reflect here.

Obviously, Justice Huntley sees from my first effort that "justice," as it ought to exist, has here miscarried in every direction. To which it might be added that a reading of the record leaves a strong feeling that the district judge became extremely incensed at Phillips for his foolishness in dragging on a marijuana joint in the county jail after he had been awarded probation, and otherwise might have straightened out his uncontrolled youth and avoided incarceration in the penitentiary. This, of course, was the same judge who did not inform Phillips of his right to counsel in post-conviction proceedings, or of his right of appeal, and if indigent, to counsel. At any rate, there is much in what Justice Bakes wrote over ten years ago which should cause this Court great concern today in refusing to consider fundamental error—error immediately obvious to any member of this Court who reads the transcripts—in favor of putting off to another day serious issues which *appointed* counsel I conceded likely did not know about. However, I would be the first to suggest, even also concede, that an attorney of ten years practice in the no-crime area of Fruitland, Idaho cannot be expected to have the expertise in criminal matters which public defenders in Boise, Caldwell, Sandpoint, Twin Falls, Idaho Falls, Pocatello, etc., do have. Certainly appointed counsel in Fruitland cannot be expected to be as familiar with Idaho criminal case law as are we justices—who, as I have said, are charged with knowing all the law, following the law, and with striving to see that the state, including its courts and prosecutors, administer justice in the even-handed non-discriminatory manner outlined by Justice Bakes.

No valid reason exists for the Court not considering *sua sponte* the fundamental error to which its attention has been drawn, albeit not by appointed counsel. At the same time, no purpose is served by not considering that error. Obviously, even as Justice Bakes pointed out in *Swenor*, Phillips is entitled to return again to the courts with a post-conviction relief petition based

on ineffective assistance of counsel on appeal. Justice Huntley's separate opinion provides a prima facie case. In the meanwhile, however, Phillips is destined to languish in the penitentiary, which may or may not be unjust, but, no matter which, important issues will not be decided at this ripe opportunity.

As an important afterthought, mention must be made that when this case was not assigned to the Court of Appeals, the only deducible reason for its being retained was that it was deemed to be of some importance.[3] Nevertheless, we were not given the benefit of oral argument—and thereby lost was the possibility that some of the matters which I have presented might very well have surfaced, and additional briefing ordered as was done in *Cariaga*. The original file in the Clerk's office contains evidence that appointed counsel may have requested the attorney general's office to agree to waiving oral argument. A certificate dated November 14, 1984, signed by counsel from the attorney general office, states, "I have no objection to appellant's request to submit this case on the briefs," and also, "I have mailed a copy of this Notice to All Counsel."

Nothing in the Clerk's file gives even the slightest intimation of the reasons underlying appellant counsel's request that there be no oral argument. For my part, where a case is considered important enough to be retained in this Court, it is difficult to conceive of a reason why counsel should not appear and argue in support of his brief and against the state's. Where a reason does exist, it is even more difficult to understand why counsel does not provide this Court with the reason. Otherwise, it is not improbable that some members will see waiver of argument as a concession of weakness.

Again, for my part, oral argument generally homes in on the salient facts and law relied upon, thus shedding considerable illumination on the content of briefing.

3. An article by Justice Shepard, which was printed in *The Advocate*, Vol. 26, No. 7, August, 1983, explained the methodology attendant to the assignment process.

More importantly, however, and a factor which counsel generally may not consider, where an appeal is submitted on the briefs, it is not unlikely that some justices, myself included, will have no knowledge of the case until the assigned justice has submitted a proposed majority opinion. Depending upon circumstances and other pressing items of Court business, the proposed opinion, depending on its recitation of the record and recitation of the contentions of the parties, may not receive the attention that otherwise might have been engendered at oral argument. Again, that I make these remarks is not a leveling of criticism at appointed counsel. So far as I know no one has heretofore expounded on the importance of oral argument.

Touching again on the failure of the trial court to comply with the statutory obligation of informing post-conviction relief applicants of their right to counsel, and the further right to appointed counsel at public expense if indigent, the Clerk's file also reflects that Phillips would have wandered as aimlessly throughout his appeal as he did in the trial court but for this Court's Clerk having recommended to Phillips that he request the trial court to appoint an attorney to represent him on appeal at county expense if indigent. In that manner the Clerk of this Court fulfilled the statutory obligation when the case reached this Court. However, the initial failure of the trial court to do likewise set the stage for the summary dismissal which was entered without allocating Phillips any hearing whatever. Had Phillips been provided with counsel in the first instance at the trial level, an appeal might have not even become necessary. Had Phillips been notified of his right to appeal in the first instance from the judgment and sentence which sent him off to the penitentiary, there might not have been a post-conviction proceeding. The failures to notify Phillips as required by law, and by rule with the force of law, have trampled upon Phillips rights of due process and at the same time perhaps unnecessarily emburdened the system.