712 P.2d 694

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Gregory Stewart STOREY, Defendant-Appellant.**

**No. 14873.**

Court of Appeals of Idaho.

Dec. 20, 1985.

Alan E. Trimming and August H. Cahill, Jr., Ada County ·Public Defenders, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Steven Berenter and A. Rene' Fitzpatrick, Deputy Atts. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

The sole issue in this appeal is whether the district court abused its discretion in sentencing Gregory Storey for the crimes of robbery and battery committed with the use of a firearm. The robbery resulted in a fixed life sentence. The battery sentence, enhanced because a firearm was used, totalled thirty years—also fixed— running concurrently with the life sentence. We affirm these sentences.

The circumstances of these crimes need only be reviewed briefly. Late in the afternoon of July 9, 1981, the victim was about to retrieve his car from a parking garage in Boise, Idaho. As he was walking up the staircase he was shot twice in the back of the head, once in the neck as he turned around to confront his assailant, and a fourth time after he fell to the floor. The final shot, aimed at the victim's head, lodged in the victim's wrist as he raised his arm to protect himself. The victim's wallet and checkbook were taken and his assailant fled the scene. While the victim was still conscious, he was found by a passerby. Assistance was rendered and the police were summoned. The victim was able to give police an identification of his assailant before being transported to the hospital. It was determined that the victim's wounds were caused by .22 caliber bullets. Despite his injuries, the victim survived.

Approximately one hour after the shooting, police came upon Storey walking along the street. His description matched that of the assailant. Storey was stopped and searched. A .22 caliber pistol was found in his pocket. Four rounds had been fired. Storey was arrested for carrying a concealed weapon. The police also searched Storey's backpack and found the victim's wallet and checkbook. Storey was taken to police headquarters and questioned. He denied shooting anyone. He admitted the gun was his, but claimed he had left it home that day. He did not know how it came to be upon his person. Nor could he explain how the victim's wallet and checkbook came into his possession. The victim identified Storey as the assailant. On July 30, Storey was charged with robbery, I.C. § 18–6501; with battery with intent to commit murder and/or robbery, I.C. § 18–911; with use of a firearm during the commission of the battery, I.C. § 19–2520; and with carrying a concealed weapon. Storey

was bound over to the district court for trial and pled not guilty.

Storey, through his attorney, filed notice of intent to rely upon mental disease or defect. An order for evaluation of mental condition was entered pursuant to I.C. § 18–211, and Storey was transferred to the Security Medical Facility at the Idaho State Correctional Institute. He was diagnosed as having a "major mental disease of a schizophrenic type with paranoid features." The psychiatrist concluded that Storey was "unable to aid in his defense or appreciate the wrongfulness of his conduct." Based on the evaluation, the trial court held that Storey was unable to assist in his defense and therefore lacked fitness to proceed with trial. On January 6, 1982, Storey was committed to the Department of Health and Welfare for treatment, including the forceful administration of drugs. The trial date was vacated until such time that it was determined he could stand trial.

An updated report was filed in March of 1982 concluding that Storey's mental condition had improved to the point where he was then able to stand trial. At that time Storey's counsel moved for a judgment of acquittal.[1] The motion was denied and trial commenced on July 12, 1982. The jury rejected the mental illness defense proffered by Storey. He was convicted on all counts. In November, the district judge sentenced Storey to serve a fixed life term of imprisonment for robbery. Storey also received a fixed term of fifteen years for battery with intent to commit a serious felony. Because the jury specifically found that a firearm was used in the commission of the battery, the court enhanced the sentence by an additional fixed term of fifteen years. I.C. § 19–2520. The thirty year battery sentence was made to run concurrently with the life sentence for robbery. Finally, Storey received a concurrent term of six months for carrying a concealed

weapon. Storey filed notice of appeal, but also moved for reconsideration of the sentences under I.C.R. 35. After a hearing, the district court denied the motion. The issue raised on appeal is whether the sentences imposed are excessive.

Here, each sentence the trial court imposed was the maximum penalty. *See* I.C. §§ 18–912, 19–2520, 18–6503. The sentencing judge chose to impose fixed sentences rather than indeterminate sentences. I.C. §§ 19–2513, –2513A. The length of a sentence to be imposed is generally within the sound discretion of the trial court. *State v. Major*, 105 Idaho 4, 665 P.2d 703 (1983). If a sentence is within the statutory maximum it will not be disturbed on appeal absent a clear showing of an abuse of discretion. *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979). To prevail on excessiveness grounds, i.e., to show an abuse of discretion, the defendant must show that the sentence is unreasonable considering the particular facts of the case. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence is unreasonable if it exceeds the minimum sentence necessary to achieve the primary purpose of sentencing—protection of society—and the related goals of deterrence, rehabilitation or retribution. *Id.*

We will first consider the fixed life sentence for robbery. A person serving a fixed life sentence is never eligible for parole consideration. *State v. Rawson*, 100 Idaho 308, 597 P.2d 31 (1979). Nor is good time available to him. I.C. § 20–101A. He is in fact sentenced to the Board of Correction for the remainder of his natural life unless the sentence is commuted or he is pardoned. The question then is whether the fixed life sentence was necessary to accomplish the sentencing objectives outlined in *Toohill*.

At the sentencing hearing, the district judge noted the severity of the offense,

1. Until July 1, 1982, former I.C. § 18–213 permitted a trial judge to enter a "judgment of acquittal on the ground of mental disease or defect excluding responsibility" if, on the basis of reports filed, the court was satisfied that, at

the time of the crime, the defendant's "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law," was "substantially impaired."

saying it was the most aggravated robbery situation he ever had to confront. Because of the irrational nature of the offense, he concluded the protection of society was his primary concern. The record leaves little doubt—indeed it is undisputed—that an untreated chronic mental illness was a significant factor in the commission of these crimes.

At the hearing on defendant's motion to reconsider, Storey called a psychologist, a clinical psychologist and a senior social worker, all of whom had had contact with Storey at the Idaho State Correctional Institution since the trial. Each testified that the medication program maintained for Storey had made positive changes in his personality and behavior. They each believed that with continued supervision and medication Storey would present little risk of repeating the dangerous, irrational behavior that surfaced at the time of the crime. The district court considered the rehabilitation purpose of sentencing. However, the district judge felt that the *possibility* of rehabilitation was not enough. He concluded that because of the circumstances of the crime with its manifested attempt to take a life, Storey posed an undue risk to society. Not without reason, the judge believed Storey could never be safely readmitted into society. Therefore, the judge felt compelled to impose the maximum sentence. He told Storey that "if the doctors are correct . . . and you can be rehabilitated and . . . you can be released with safety, then, of course, the Board[2] has the power of commutation at a later time, but I think . . . I have to sentence you as I find you at this point."

■ We have carefully examined the facts and the record in this case and believe several factors support the district court's decision. First, the seriousness of the offense: The attack was unprovoked upon a victim apparently chosen at random. It was an execution-style attempt to take a human life. Only fortuitously was it un-

successful. Second, the mental state of Storey: Storey has always denied that he committed the offense. He argues instead that the evidence was planted on him by "conspirators." The presentence report suggested no other alternative but long-term treatment during incarceration, so that Storey will be unable to present a further threat to society. Third, there is the possibility that another act like this may occur if Storey is not under continuous supervision to assure that stabilizing medication would be administered regularly. Considering Storey's lack of family and other supportive resources, plus his denial of any mental disease and of any need for treatment, an indefinite period of incarceration was not unreasonable. The sentence imposed was justified to protect society from Storey's dangerous, erratic behavior. This is a sufficient basis for upholding the sentence. Therefore, we affirm the fixed life sentence for robbery.

Appellant contended at oral argument that the fixed life sentence for robbery was enhanced by a consecutive fixed sentence of fifteen years for use of a firearm. The "Judgment of Conviction" entered in this case, standing alone, could lead to such a belief. The judgment is not clear. Only when the information and the verdict forms are examined is it clear that the jury specifically found that the firearm was used in the commission of the battery. From the record it is apparent that the sentencing judge intended to enhance the fifteen-year sentence for battery by an additional fifteen-year sentence for use of a firearm. I.C. §§ 18–911 and 19–2520. Therefore, we will review the sentences for excessiveness, construing them as the judge intended.

■ As we have previously noted, a fixed fifteen-year sentence for battery, enhanced by an additional fifteen years for use of a firearm, represents the maximum sentence which the law allows for this crime. However, the sentence is consistent with the sentence imposed for the robbery.

2. Under art. 4, § 7 of the Idaho Constitution and I.C. § 20–211 and –213, the Board of Correction, acting through the Commission of Par-

dons and Parole, has the power to commute fixed sentences. *See State v. Rawson, supra.*

In our view the same reasons for affirming the robbery sentence are applicable to the battery sentence. Therefore, we do not believe this sentence, standing alone or in combination with the other sentences, is excessive.

When a judgment of conviction contains the sentence, it must show clearly on its face the sentence imposed and, if more than one sentence is involved, it should show clearly how those sentences relate to each other. We believe it is necessary for the district court to correct the judgment of conviction entered in this case to more clearly set forth the sentence imposed for the battery. We consider this to be a mere clerical error which can be corrected under I.C.R. 36 when the case has been remanded. *See e.g. State v. Greensweig,* 102 Idaho 794, 641 P.2d 340 (Ct.App. 1982).

For guidance to sentencing judges, we repeat what we first said in *State v. Kaiser,* 106 Idaho 501, 681 P.2d 594 (Ct. App.1984) *vacated on other grounds,* 108 Idaho 17, 696 P.2d 868 (1985). "We think I.C. § 19–2520 must be construed so that the underlying sentence and the enhancement sentence can be viewed as one continuous sentence with two distinct segments." 106 Idaho at 503, 681 P.2d at 596. "When a sentence is enhanced under I.C. § 19–2520 each segment should, of course, be separately pronounced and set forth in the judgment of conviction and commitment so that the propriety of either component of the sentence can be determined in the event of any judicial review of the sentence." 106 Idaho at 504, 681 P.2d at 597.

We note another matter of more significance which has not been raised directly on appeal or argued to us. It involves the sentence imposed for battery. The acts charging the commission of battery in Count I of the information are the identical acts charged in Count II of the information as the means by which the robbery was accomplished with force. This suggests that the battery must be construed to be an included offense within the robbery charge. *See e.g. State v. Thompson,* 101 Idaho 430, 614 P.2d 970 (1980); *State v. Blacksten,* 86 Idaho 401, 387 P.2d 467 (1963); *Bates v. State,* 106 Idaho 395, 679 P.2d 672 (Ct.App.1984). The constitutional prohibition against double jeopardy bars conviction and punishment for included offenses. If there is a double jeopardy problem, then the battery charge should have been dismissed. No sentence should have been entered upon the conviction for that charge. Because neither party addressed this problem in our court, we will not decide the issue. We merely note that on remand Storey will have the opportunity to present this issue to the district court by way of a motion under I.C.R. 35 to correct or modify the sentence. Thus, the district court can deal with both problems relating to the sentences at the same time.

WALTERS, Chief Judge, specially concurring.

While I concur in the foregoing opinion, I express no view as to whether any double jeopardy problem exists.

BURNETT, Judge, concurring in part and dissenting in part.

Upon the present record, I join the Court in affirming the sentence imposed for battery, together with the enhancement for use of a deadly weapon. I also concur in identifying the need to examine an included offense issue, and to confirm the nexus between the battery sentence and its enhancement, in future proceedings. However, I write separately to highlight problems in Idaho's sentencing laws and to express my disagreement with the fixed life sentence imposed for robbery in this case.

The record before us portrays strengths and weaknesses in our criminal justice system. The police work here was superb. Hardly an hour elapsed between the report of a crime and the detention of a suspect. But the police did not act alone. They were assisted by a courageous and clear-minded victim who provided details about the crime even as he was being whisked by ambulance to a hospital. Several citizens,

belying the notion that people today are unwilling to "get involved," rushed to the victim's aid, summoned the police and furnished information about the suspected assailant. When Storey was taken into custody, his rights were duly observed. The police and prosecutor carefully assembled an irrefutable case against him. Consequently, at trial there was no contest over Storey's perpetration of the offenses charged. The issue was narrowed to whether, under statutes then existing, Storey's mental illness precluded criminal responsibility for his actions.

On this issue, too, the system performed well. Storey was examined by two psychiatrists, a psychologist and other clinicians. The facts of the case, Storey's background and the experts' opinions were probed by competent counsel for both sides. The judge prudently delayed the trial until Storey was fit to participate. The issue of criminal responsibility was tendered to the jury upon proper instructions. The jury's finding of guilt was abundantly supported by the evidence.

However, the sentencing proceedings have disclosed areas where the system needs improvement. The first problem lies in the statutory treatment of crime and punishment. Robbery is defined as a "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." I.C. § 18-6501. The crime may be punished by life imprisonment. I.C. § 18-6503. In contrast, where property is taken from the person of another without force or fear, such conduct is defined as grand theft and is punishable by confinement up to fourteen years. *See* I.C. §§ 18-2407(1)(b)(4) and 18-2408(2); *see also* former I.C. §§ 18-4604 (2) and 18-4606. The Legislature also has created a separate crime for battery with intent to commit murder or robbery. *See* I.C. § 18-911. Confinement for this crime is limited to fifteen years. I.C. § 18-912.

Taken together, these statutes convey a curious message. Robbery is an exceptionally serious crime, warranting life imprisonment in some instances because it poses a threat to human life and safety. Yet the penalty prescribed for an actual use of force, with intent to commit murder or robbery, does not differ materially from that prescribed for a mere taking of property from another without using force or fear. Indeed, were it not for the availability of firearm enhancements in certain cases, our statutes would express little more opprobrium toward would-be murderers than toward pickpockets.

The instant case illustrates how the foregoing statutes, enacted at various times by different legislative sessions, fail to express a coherent public policy toward protecting property, on one hand, and toward protecting human life and safety on the other. What policy do our statutes advance when they provide that a person who shoots a fellow human being with intent to murder or rob him cannot be confined for more than fifteen years, plus the enhancement, but that if the same person also lifts a checkbook and wallet containing two dollars, he may be imprisoned for the rest of his life? The anomaly demonstrates a need for our Legislature to reform the criminal code, bringing crimes and punishments into a more rational relationship with each other.[3] The criminal justice system cannot respond effectively to public policy if the statutes do not clearly indicate what that policy is.

The uncertain message conveyed by our statutes is accompanied by an uncertain relationship between the judicial and correctional roles in determining appropriate sentences. As discussed more fully below, the district judge in this case received undisputed evidence that Storey's mental illness was treatable, that he had responded well to medication, and that he was not an appropriate person to be imprisoned for the rest of his life. Nevertheless, the district

---

**3.** A legislative sentencing committee, created by the 1985 Legislature, is studying numerous proposals for improving Idaho's sentencing system.

Among the proposals is a comprehensive revision of the substantive crime provisions of the Idaho Code.

judge imposed a fixed life sentence and said:

> I'm aware that if the doctors are correct and that you can be rehabilitated and that you can be released with safety, then, of course, the Board [sic] has the power of commutation at a later time, but I think at this point I have to sentence you as I find you at this point. I think you can never be released with safety....
>
> ... I must place you where you can't repeat this offense or this threat to society again.

These remarks carry a profound implication. They suggest that a judge may impose a fixed sentence with the explicit anticipation that it might be commuted later. The power of commutation, like the pardoning power, is vested by our state constitution in the executive department. IDAHO CONST. art. 4, § 7. Clemency is wholly a matter of executive discretion. When a sentence has been imposed, neither the judge nor the prisoner has any ground to expect that it will be changed. Indeed, as a matter of comity between branches of government, such changes should be relatively rare. A judge ought not to impose a harsh sentence in contemplation that it will be commuted later if it proves to be unjust.

More pragmatically, and perhaps more urgently, reliance upon a future exercise of the commutation power directly contravenes what should be a fundamental goal of our criminal justice system: truth in sentencing. The integrity of the judiciary, and the public's confidence in the entire system, are severely eroded when convicted defendants do not actually serve the sentences pronounced in open court. A judge's sentence should say what it means and do what it says. Commutation should not be an occasion for executive second-guessing of a judge, nor should it be viewed as a mechanism for granting parole from a fixed sentence. When judge chooses to impose a fixed life sentence, he should fully intend—and the prisoner should fully expect—that the sentence will be served in confinement until the prisoner dies. If the circumstances of the case do not permit such an inflexible penalty, a fixed life sentence is inappropriate.

In the present case, the district judge acknowledged uncertainty about Storey's future. As quoted above, the judge opined that Storey could "never be released with safety to society," but the judge also noted that the sentence could be commuted if "the doctors are correct and ... you can be released with safety...." These contrasting observations relfect the difficulty of attempting to predict a defendant's future risk to society, based upon information available at the time of sentencing. However, Idaho's present sentencing scheme compels judges to do exactly that. When judges impose sentences of confinement, they are abjured to consider the criteria of protecting society, retribution, deterrence and rehabilitation. Of these criteria, only retribution and deterrence can be fully evaluated upon information available to the judge. The judge must guess at the defendant's course of rehabilitation and the degree of risk he might pose to society when eventually released.

Our criminal justice system would make better sense if a judge were allowed to prescribe a minimum period of confinement necessary to achieve the goals of retribution and deterrence, followed by a second period in which correctional authorities—having intensively studied the prisoner—could determine when, or whether, his rehabilitative progress allows a safe return to society. This kind of sentence, combining fixed and indeterminate components, would allow judges and correctional authorities to perform complementary functions. It also would produce greater truth in sentencing because the minimum period of confinement prescribed by the judge actually would be served (subject, perhaps, only to earned "good time"). Unfortunately, Idaho's statutes do not authorize such a sentence. Idaho Code § 19–2513 provides for indeterminate sentences while I.C. § 19–2513A provides that a court may impose a fixed sentence "[a]s an alternative to an indeterminate sentence...." The

Legislature's choice of the word "alternative" arguably precludes a mixed sentence.[4] Consequently, judges confront "all or nothing" choices between fixed sentences, which must be served entirely in confinement, and indeterminate sentences from which prisoners may be paroled.

The instant case starkly portrays this choice. Storey committed a frightening crime. Had the bullets from his gun deviated a few millimeters, the case would have been a homicide. The victim still carries bullets that could not be removed safely. He has undergone physical therapy for nerve damage and muscle atrophy, and he has incurred substantial medical expenses. But he has recovered and has returned to work in an intellectually challenging profession.

Storey had no prior record of any felony or crime of violence. In 1967, 1970 and 1974, he was convicted of nonviolent misdemeanors. Shortly before the instant crime, he was found in possession of a concealed weapon, another misdemeanor. Judgment was withheld for that offense.[5] Storey was a graduate of California State University at Long Beach, having received a B.A. degree in political science. He was attending courses at Boise State University when the robbery occurred.

But Storey's private life was troubled. Raised by his mother, with virtually no contact from his father, he was deeply affected when his mother died from cancer in 1979. He moved to Boise in 1980, living off money his mother had left him and finding only scattered employment. Acquaintances noted that his behavior was unusual. They heard Storey describe conspiracies against him and they observed him answering silent "voices". He expressed an affectation for guns and for Nazi history. He engaged in arguments and unpleasant confrontations at taverns and other public places.

When Storey was examined after the robbery, the doctors found that he suffered from a "major mental illness." The illness was diagnosed as schizophrenia, paranoid in type. As the doctors later explained to the court and jury, schizophrenia is a disturbance in thought association, a schism between thought and reality. (It is not the "split personality" that lay persons often envision.) The precise cause of the disease is not known. It may reflect a biological abnormality in brain chemistry.

In Storey, the disease manifested itself in delusional and constricted thinking. Although the delusions did not encompass Storey's entire life, they were sufficiently pervasive to produce psychosis—that is, a loss of contact with reality and of ability to function normally. Although the illness affected Storey's behavior, it was not so advanced as to preclude criminal responsibility.

While confined, Storey was treated for his illness. The treatment program included the administration of neuroleptic (antipsychotic) medication. The program produced marked improvement in Storey's condition. By the time of trial, his illness was described as being in "reasonable" remission, with some residual symptoms.

At a subsequent hearing on Storey's motion for reduction of the sentences, a psychiatrist testified that Storey did not have a "sociopathic personality disorder," nor did he exhibit "what we would commonly refer to as a criminal kind of personality." The doctor further testified that Storey appeared to be in the "top twenty percent" of schizophrenic patients—those who respond well to neuroleptic medication. The doctor stated that after several years of confinement, Storey would be an appropriate candidate for release to an out-patient treat-

4. This precise question has not yet been decided by the Idaho Supreme Court or Court of Appeals. However, an Attorney General's opinion has commented that mixed sentences appear to be impermissible under the present statutes. *See* 9 Op. Idaho Att'y Gen. 59 (1979).

5. Armed with proverbial "20–20 hindsight," we now can see that the concealed weapon case might have provided an opportunity for psychological examination and intervention before the robbery.

ment program, subject to resumed confinement if he did not fully cooperate in continued treatment. The doctor explained that the neuroleptic medication was administered by injection; consequently, it would not be necessary to trust Storey to take the medication on his own. Failure to receive a timely injection would not result in a sudden deterioration of behavior. The doctor observed that decompensation would occur gradually over a period of "weeks or months." He noted that Storey's illness originally had gone untreated for several years before manifesting itself in violent behavior.

A social worker at the Idaho State Correctional Institution testified that Storey was "nonviolent, passive and ... no threat to security." A clinical psychologist at the ISCI testified that incarceration under a fixed life sentence would exacerbate the mental illness, "eventually result[ing] in a degree of mental illness that would be incurable." [6]

There are, of course, limits to what doctors know and to what they can accomplish. The doctors in this case candidly acknowledged that no one could "guarantee" the nonrecurrence of any criminal behavior by Storey. The state has argued that such uncertainty about the future warrants the affirmance of a fixed life sentence. But the argument sweeps too broadly. Some measure of uncertainty exists in virtually every criminal case. The lack of a "guarantee" does not entitle us to disregard the otherwise unrefuted evidence and professional testimony that Storey can be treated and eventually could be returned to society with appropriate safeguards. I reject the implicit suggestion that competent doctors and correctional authorities never should

be trusted to make such a decision in this case.

Fixed life sentencing is justified not by uncertainty but only by a high degree of certainty—certainty that the defendant will be dangerous until he dies, or certainty that the objectives of retribution and deterrence require confinement for life even if the defendant ceases to be dangerous. The record in this case does not support either of these conclusions.

As the Court's lead opinion explains, a sentence of confinement should not exceed the minimum that appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, retribution or rehabilitation. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A trial judge's determination of appropriate sentence is entitled to considerable deference. "An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria." *Id.* at 568, 650 P.2d at 710. But this appeal turns not so much upon differing views of the facts as upon differing views of the function of a fixed life sentence in our criminal justice system. The issue is one of judicial policy.

Here, the district judge has made no finding that retribution or deterrence would require confinement until death. A cogent showing has been made that the defendant could be rehabilitated and eventually returned to society. Accordingly, I would hold that a fixed life sentence exceeds the minimum necessary to achieve the enumerated sentencing objectives. The life sentence for robbery should be indeterminate rather than fixed.

This does not mean that Storey should be released in the near future, nor that he must be released at all.[7] An indeterminate

---

**6.** In addition to the human cost, a fixed life sentence imposes a formidable economic cost. The costs of confinement are $13,000 per year in federal prisons and they range from $5,000 to $23,000 in state prisons. U.S. DEPT. OF JUSTICE, REPORT TO THE NATION ON CRIME AND JUSTICE (1983). When a judge imposes a fixed life sentence upon a young man, he in

effect writes a check against the taxpayers' account for several hundred thousand dollars.

**7.** As noted at the outset of this opinion, I join in upholding the concurrent, fixed sentence of fifteen years for the battery, enhanced by another fixed term of fifteen years for use of a firearm. Unless the battery sentence is set aside on remand, it will require Storey to be confined twenty years, with credit allowed for the "for-

sentence, like the fixed sentence, would authorize confinement for life. However, an indeterminate sentence, unlike the fixed sentence, would not rest upon a pretension of certainty about the future. Neither would it depend upon an exercise of the independent constitutional power of commutation in order to assure a just result. These fundamental differences lie at the heart of our sentencing system. They are entitled to greater recognition that the district court and today's majority have given them.

mula" good time currently available under I.C. § 20–101A. *See generally State v. Miller,* 105 Idaho 838, 673 P.2d 438 (Ct.App.1983). Even if the battery sentence were set aside, twenty years could be viewed as an appropriate period of confinement before consideration is given to release. *Compare* I.C. § 20–223 (mandating at least ten years' incarceration upon an indeterminate life sentence). Such extended confinement might not provide an optimal rehabilitation program for Storey, but it would be entirely consistent with a balancing of rehabilitation against the criteria of retribution and deterrence.