681 P.2d 594

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Michael L. KAISER,**
**Defendant-Appellant.**

**No. 13711.**

Court of Appeals of Idaho.

April 24, 1984.

Petition for Review Granted
June 13, 1984.

John C. Lynn of Lynn, Scott & Hackney, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

On the night of August 22, 1979, John Dorcheus, a bouncer at the Bouquet Bar in Boise, was approached by one of the waitresses. She complained that a friend of his, defendant Michael Kaiser, was bothering her. Kaiser, who had been drinking heavily that afternoon and evening, took offense to Dorcheus' request that he leave the bar. While being escorted out, Kaiser suddenly struck Dorcheus in the head, knocking him to the floor unconscious. Another bouncer stepped up to hustle Kaiser from the premises. The police arrived during the ensuing struggle.

In the meantime, Dorcheus had recovered from the blow and effected a citizen's arrest of Kaiser charging him with battery. After receiving medical treatment for minor injuries, Kaiser was taken to the county jail and booked. A few minutes later he posted bond and was released. After the bar closed, Dorcheus went home with some of his co-workers to "let off steam," as was their custom. It was not long, however, before Dorcheus was alone with his roommate. As they talked in the early morning hours, Kaiser came in through the open front door. Words were exchanged and

Dorcheus leapt to his feet and began to grapple with Kaiser, who was then holding a loaded .32 caliber semi-automatic pistol. A shot was fired; then two more. At this point the roommate hurriedly left the scene. He later testified that he heard two more shots as he rushed out.

When the police arrived, they found Dorcheus dead, shot four times. The next day, Kaiser, who had driven to California immediately after the shooting, turned himself in. He was charged with first degree murder, I.C. § 18–4003, and with using a firearm during the commission of that murder, I.C. § 19–2520. Following a jury trial he was convicted of second degree murder and sentenced to an indeterminate life term. I.C. § 18–4004. The jury also found that Kaiser did in fact use a firearm in the commission of the murder and the district court therefore gave him an additional fifteen-year indeterminate sentence, to run consecutively to the first sentence. I.C. § 19–2520. Kaiser appeals, contending that the district court abused its discretion in pronouncing these sentences.

In view of Kaiser's contention that his sentences were excessive and were an abuse of discretion, we must consider whether an indeterminate sentence for a term "not to exceed life imprisonment" can be enhanced by an additional consecutive term under I.C. § 19–2520. To our knowledge this question has not previously been decided in Idaho.

The statute provides in part:

Any person convicted of [one of the enumerated offenses] who carried, displayed, used, threatened, or attempted to use a firearm while committing the crime, shall, in addition to the sentence imposed for the commission of the crime, be imprisoned in the state prison for not less than three (3) nor more than fifteen (15) years. Such additional sentence shall run consecutively to any other sentence imposed for the above cited crimes.

In construing § 19–2520 our Supreme Court has held that the carrying of a firearm during the commission of a felony is not a separate crime nor does it fix a mandatory sentence for such an act. "Rather, in scope and application, I.C. § 19–2520 can be analogized to the habitual offender statute." *State v. Cardona,* 102 Idaho 668, 670, 637 P.2d 1164, 1166 (1981) (footnote omitted); *see also State v. Smith,* 103 Idaho 135, 645 P.2d 369 (1982). "The legislature has clearly said that any person convicted of certain crimes while carrying, displaying, using, threatening, or attempting to use firearms while committing the crime shall have their sentence for the crime enhanced." *State v. Thompson,* 101 Idaho 430, 439, 614 P.2d 970, 979 (1980) (Shepard, J., concurring and dissenting). To "enhance" simply means to make greater; it is synonymous with "increase." BLACK'S LAW DICTIONARY 475 (5th ed. 1979). Thus, the total punishment, by imprisonment, for an enumerated crime committed with a firearm may exceed, by as much as fifteen years, the maximum punishment for the same crime committed without the use of a firearm.

In spite of the mandatory language of § 19–2520, it is obvious that an enhanced sentence need not be given in every case covered by the statute. Taken literally, § 19–2520 would require a district judge to impose an additional term of not less than three years even where the underlying sentence might be the death penalty. This would be a meaningless application of the statute. It likewise would be a useless act to enhance a fixed life sentence where there is no possibility of parole.

We also find it conceptually difficult to apply the enhancement provisions to a sentence calling for an indeterminate life imprisonment. A sentence to the custody of the Board of Corrections for a term not to exceed life terminates only upon the death of the inmate or by a pardon granted by the Commission of Pardons and Parole. A sentence is not terminated by parole. When an inmate is released on parole his sentence continues until it terminates by operation of law or until the Commission of Pardons and Parole grants a final discharge to a person on parole prior to the expiration of the sentence. I.C. § 20–233.

The Commission of Pardons and Parole also has authority to change a sentence through its power of commutation, to one that is less severe. Commutation, however, results in a sentence different than the one imposed by the court.

■ We recognize that the district judge here thought that by adding the fifteen-year "enhancement" sentence he would be increasing, from ten years to fifteen years, the minimum time that Kaiser would have to serve before parole. He concluded that under the life sentence Kaiser would serve a minimum of ten years, as mandated by I.C. § 20–223. He assumed that, in addition, Kaiser would be required to serve one-third of the fifteen-year enhancement sentence. It could be argued that the legislature intended that § 19–2520 would increase the minimum time a prisoner would have to serve before parole eligibility. It will have that effect in some cases. However, such an intent is not expressed in the statute.

We are unable to construe the statutes in the manner envisioned by the district court. To do so would produce capricious results in some cases. For example, a prisoner who received an indeterminate term of forty years imprisonment for second degree murder would be eligible for parole in ten years. I.C. § 20–223. Another prisoner who received a thirty-year indeterminate term for the same crime, enhanced by an additional ten years, would have to serve thirteen and one-third years before becoming eligible for parole, following the theory of the court below.

In fact, there is nothing in § 19–2520 that would require one-third of the enhancement sentence (if treated as a separate sentence) to be served before parole eligibility. The same can be said about I.C. § 20–223, our general parole eligibility statute. On the other hand, companion statutes to § 19–2520, sections 19–2520A, –2520B and –2520C, all contain restrictions against early release on parole where these enhancement provisions are applicable. The companion statutes carry a different import.

■ Because it is not clear that § 19–2520 requires the result intended by the district judge, we must not supply—by judicial construction—what is lacking. "It is a well-settled principal [sic] of law that criminal statutes must be strictly construed. [Citations omitted.] This principle extends not only to the elements of the substantive crime, but also to the sanctions potentially involved." *State v. Thompson,* 101 Idaho 430, 437, 614 P.2d 970, 977 (1980). "Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* We believe that the Commission of Pardons and Parole should treat a sentence imposed under I.C. § 19–2520 as a segment of one total sentence for the purposes of determining parole eligibility under I.C. § 20–223. The commission should apply the provisions of § 20–223 against the total sentence to determine whether eligibility for parole has been obtained in any given case.

We think I.C. § 19–2520 must be construed so that the underlying sentence and the enhancement sentence can be viewed as one continuous sentence with two distinct segments. Under this view, if the underlying sentence was life imprisonment, pragmatically there can be no additional enhancement sentence to run consecutive to the "sentence imposed." A life sentence does not allow for any further "enhancement." *Accord People v. Walker,* 18 Cal.3d 232, 133 Cal.Rptr. 520, 555 P.2d 306 (1976); *see also People v. Meredith,* 29 Cal.3d 682, 175 Cal.Rptr. 612, 631 P.2d 46 (1981). We conclude that the fifteen-year enhancement sentence in the present case must be vacated.

It is important to remember that we are not talking here about separate punishments for multiple offenses. We are dealing only with one crime, murder in the second degree, and the permissible limits of punishment for that one crime. However, where two or more crimes are committed by the same defendant, then it is entirely possible for the defendant to receive a life sentence for one of the crimes and a consecutive term (or terms) of imprisonment

for the other crime(s). Moreover, it is proper to charge a defendant with the use of a firearm and instruct the jury accordingly, even if the underlying felony is one for which a sentence to life imprisonment may be imposed. This is so because the jury may find the defendant guilty of a lesser included offense, or an appellate court might reduce the degree of the crime to one for which a life term is not prescribed. Thus the finding that a firearm was used would be relevant. *See People v. Walker, supra.* When a sentence is enhanced under I.C. § 19–2520 each segment should, of course, be separately pronounced and set forth in the judgment of conviction and commitment so that the propriety of either component of the sentence can be determined in the event of any judicial review of the sentence.

■ We now address Kaiser's assertion that the indeterminate life sentence was excessive. If a sentence is within the statutory maximum, it will not be disturbed on appeal unless the appellant affirmatively shows a clear abuse of discretion. *State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979). The length of the sentence imposed here was the maximum allowed by law.[1] Thus Kaiser must show a clear abuse of discretion on the part of the district court before the sentences will be overturned. A clear abuse of discretion is shown if a sentence is unreasonable considering the particular facts of the case before the court. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). A sentence is reasonable only to the extent that the term of confinement does not exceed the minimum sentence necessary to accomplish "the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *Id.*

As we have previously noted, an inmate serving an indeterminate life sentence for second degree murder becomes eligible for parole consideration after ten years. I.C. § 20–223. Therefore, pursuant to this statute and consistent with our treatment of such sentence in *State v. Wilde,* 104 Idaho 461, 660 P.2d 73 (Ct.App.1983), we will assume—solely for the purpose of establishing a term of confinement for appellate review—that the term of confinement will be at least ten years. We must therefore decide whether, under the facts viewed reasonably, a term of confinement for ten years "would exceed the period of confinement which appears necessary" to accomplish the sentencing objectives. *State v. Toohill,* 103 Idaho at 569, 650 P.2d at 711. It is incumbent upon the appellant to demonstrate that the sentence meted out exceeded what was necessary. We further note that "[i]n deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ." *Id.* at 568, 650 P.2d at 710.

■ At the sentencing hearing, the district court made several observations regarding Kaiser. First, Kaiser was a multiple offender. Although some of his convictions stemmed from felony charges, all of them appeared to be misdemeanors, *e.g.,* credit card fraud, petit theft, petit larceny and check forgery. Second, the psychological reports prepared during the presentence investigation indicated that Kaiser was a borderline sociopath, which the district court defined as one "with a low or no conscience structure." Third, Kaiser also had a history of alcohol and drug abuse. Fourth, the district court also stated that Kaiser had killed a "witness," since the victim had filed charges against Kaiser for battery and presumably would have been the key witness in any trial arising out of that charge. The court noted that this is one factor which might call for the death penalty in a first degree murder case. Finally, the district court emphasized the seriousness of the crime—"the only one more

---

1. As an alternative sentence, the judge could have sentenced Kaiser to a fixed term of life imprisonment under I.C. § 19–2513A, without possibility of parole. He consciously rejected

that option in favor of an indeterminate sentence which would allow for rehabilitation and eventual release back into society.

serious than this is first degree murder." The court explicitly considered the deterrent effects of a severe sentence. On the other hand, the court was also concerned with the possibility of rehabilitation. The court rejected a fixed life sentence—the maximum penalty for second degree murder—because of the hope harbored for Kaiser's eventual rehabilitation and reentry into society.

After carefully examining the record, including the presentence report, we cannot say that the indeterminate life sentence imposed here was unreasonable. The district judge conscientiously weighed his alternatives, keeping in mind the sentencing objectives and the particular facts of the case before him. We believe that under a reasonable view of the facts considered by the district judge, the term of confinement presumed to result from this sentence did not exceed the period necessary to accomplish the goals of protection of society, deterrence and rehabilitation. Therefore, while we vacate the fifteen-year enhancement sentence for use of a firearm, we affirm the indeterminate life sentence.

WALTERS, C.J., concurs.

BURNETT, Judge, dissenting in part.

I concur in the result reached by the court in holding that the indeterminate life sentence is not excessive. However, I respectfully disagree where the court's opinion holds that the enhanced term of the sentence, for use of a firearm, must be vacated.

I

At the outset, it is important to note that this case illustrates the difficult task of defining a coherent relationship among Idaho's current statutes governing the correction of criminal offenders. During much of the twentieth century, Idaho's sentencing scheme in noncapital cases consisted simply of external limits of punishment prescribed by the Legislature, coupled with broad grants of discretion to the courts and to correctional authorities in pronouncing and administering indeterminate sentences.

However, since the late 1970's our Legislature, responding to public insistence upon more rigorous treatment of offenders, has begun to change the shape of the system. For example, the Legislature has provided fixed term sentences as alternatives to indeterminate sentences under I.C. § 19–2513A; it has extended the time, prescribed in I.C. § 20–223, which some violent offenders must serve in custody before receiving parole consideration; and it has provided in I.C. §§ 19–2520A, –2520E mandatory minimum sentences, and enhancements of sentences, for certain violent or repeat offenders. As exemplified in the present case, the Legislature also has provided in I.C. § 19–2520 for enhancement of sentences imposed for enumerated crimes committed while using firearms.

These statutory changes have been grafted to the existing sentencing scheme. Consequently, instead of an integrated body of sentencing law, we now have disjointed statutes which occasionally seem to conflict with each other and which displace—or cast doubt upon—prior case law and correctional regulations. Of course, the disintegrated condition of our sentencing laws is not to be condemned; it reflects the efforts of responsive public officials to accommodate shifts in public policy. Nevertheless, until Idaho's sentencing laws are comprehensively revised, our courts will continue to confront the difficult, and sometimes unpopular, task of identifying cracks in the system and patching them where possible.

II

In this case, the majority correctly has identified a conceptual inconsistency between a life sentence and an enhanced sentence. But it does not necessarily follow, as the majority suggests, that the enhancement in this case is meaningless and should be stricken from the sentence. Enhancing an indeterminate life sentence is not a meaningless act. Relatively few indeterminate life sentences are fully served in confinement. Most result in parole and even-

tually in discharge. I believe enhancement of such a sentence, for use of a firearm while committing a crime, carries important implications for any parole decision. The Commission for Pardons and Parole may— and should—require a portion of the enhanced term of the sentence, as well as part of the underlying life sentence, to be served before parole. Indeed, in the present case, the district judge stated upon the record his expectation that enhancement of the life sentence would produce a longer minimum term of confinement than would otherwise result. Counsel for the state and for the appellant also made this assumption in oral argument before our court.

The enhancement statute reflects a determination by the Legislature and Governor, based upon their perceptions of public policy, that a person who uses a firearm while committing a crime should be punished more severely than one who does not. Firearms present a risk to life and safety far greater than the risks associated with most other instrumentalities of crime. The people of our state, who value the right to use firearms lawfully, are entitled to insist upon strict punishment of those who use them unlawfully. That message is embodied in I.C. § 19–2520. It is transmitted to parole authorities through the enhanced term of the sentence. Its implications for a parole decision should not be destroyed in a murder case, by striking down the enhanced term of a life sentence, simply because it presents a conceptual difficulty.

Moreover, I doubt that our court has authority to strike down part of a sentence unless it is excessive or legally defective. The majority does not contend that the enhanced sentence in this case was excessive. Neither does the mere existence of a conceptual difficulty render an enhanced sentence legally defective. The conceptual problem, simply stated, is if a life sentence is fully served without parole and discharge, then the enhanced term becomes superfluous. However, this problem is not restricted to enhanced sentences under I.C. § 19–2520. It inheres in any term of custody added to a life sentence, including a consecutive sentence for another crime. The majority suggests that such consecutive sentences are permissible, but that an enhancement like the one presented in this case must be stricken down. Although the majority maintains that consecutive sentences are distinguishable from enhanced sentences, I believe the distinction is without a difference as far as the issue here is concerned.

The majority further suggests that I.C. § 19–2520 somehow is ambiguous and that the enhanced term in this case should be vacated in the exercise of lenity. But I find nothing ambiguous about the statute. It plainly requires an enhanced term for use of a firearm; and it makes no exception for life sentences. I believe the court's opinion confuses ambiguity—the existence of two or more meanings—with the majority's notion that the statute is meaningless as applied to this case. The principle of lenity is invoked by a choice between meanings. The court's opinion poses no such choice. Rather, it urges that the statute be given no meaning, and no effect, where indeterminate life sentences are concerned. The principle of lenity is inapposite.

Finally, to justify vacating the enhanced term in this case, the majority relies upon *People v. Walker*, 18 Cal.3d 232, 133 Cal. Rptr. 520, 555 P.2d 306 (1976). In that case, the California Supreme Court explicitly acknowledged that there is no legal defect in the enhancement of a life sentence. The court also acknowledged that enhancement may affect parole decisions. Nevertheless, the California court struck down the enhancement of a life sentence, observing tersely that any legislative intent to affect parole decisions was not stated in the enhancement statute itself. I believe the California decision reflects judicial fiat rather than judicial reasoning. We need not, and should not, emulate it. The impact of a sentencing statute upon parole decisions is implicit. It need not be recited explicitly in each enactment by the Legislature in order to gain recognition by the courts.

In summary, the enhancement of an indeterminate life sentence is neither meaningless nor legally defective. Therefore, I would not vacate the enhanced term in this case.

### III

Consequently, I am obliged to state my view concerning the reasonableness of the sentence, as enhanced. Unlike the majority, I would not assume that the appropriate measure of confinement, for determining whether the sentence is excessive, is only ten years. In *State v. Toohill,* 103 Idaho 565, 569, 650 P.2d 707, 711 (Ct.App.1982), we said that one-third of an indeterminate sentence would be treated—solely for the purpose of appellate review—as the duration of confinement, "unless the record indicates the contrary." By parity of reasoning, I believe the ten-year measure of confinement applied to indeterminate life sentences, as noted in *State v. Wilde,* 104 Idaho 461, 660 P.2d 73 (Ct.App.1983), may be altered if there is a contrary indication in the record.

In this case, the contrary indication is manifest. The sentencing judge stated of record his intention, when fashioning the enhanced sentence, that Kaiser serve not less than fifteen years in confinement. Accordingly, I would review the sentence upon a presumption that confinement will extend for at least fifteen years, rather than ten years. Nevertheless, applying the *Toohill* sentence review criteria to the nature of the offense and the nature of the offender—as outlined in the majority opinion—I would hold the enhanced sentence not to be excessive. It should be affirmed in its entirety.