719 P.2d 1155

STATE of Idaho, Plaintiff-Respondent,

v.

William A. LANGLEY,
Defendant-Appellant.

No. 16239.

Supreme Court of Idaho.

May 2, 1986.

Rehearing Denied June 11, 1986.

William A. Langley, Boise, pro se.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

William Langley was convicted of robbery, pursuant to I.C. § 18–6501, and possession of a firearm during the commission of a crime, pursuant to I.C. § 19–2520. The district court sentenced Langley to an indeterminate life sentence on the robbery count and a consecutive 15-year indeterminate term pursuant to I.C. § 19–2520, for the use of a firearm in the commission of the robbery. Langley now argues that his conviction should be overturned. We disagree and uphold the judgment of conviction and the sentence imposed.

On September 6, 1980, a Molenaar's Jewelry Store in Boise was robbed. After an informant tied Langley to the crime, two Molenaar's employees picked Langley out of a photographic lineup, identifying him as the man who had held them at gunpoint, forced them to lie on the floor, handcuffed them, and threatened to "blow off" their heads. Langley, no stranger to the criminal justice system, was subsequently extradited from Utah where he was being held on an unrelated charge.

Langley insisted on representing himself, agreeing to use a public defender only as a legal advisor. Acting *pro se*, with the public defender's office as legal advisor, Langley filed a number of pretrial motions. In fact, the record reflects that Langley filed over twenty pretrial motions. Most of these motions sought dismissal of the charges against Langley due to alleged defects in the extradition proceedings, disqualification of the district court judge,[1] or suppression of the prosecution witnesses' testimony. The record also reflects that between the arraignment on February 18, 1983, and July 18, 1983, when Langley ultimately stood trial, Langley appeared at least nine times in the district court to argue these various motions. A legal advisor from the public defender's office was present at each of these court appearances.

Trial was originally set for May 31, 1983. The minute entry from that date indicates that Langley refused to go to trial at that time, requesting a continuance. He argued that he needed the continuance in order to obtain alibi witnesses. Following argument by both Langley and a representative from the public defender's office, the trial was continued until July 18, 1983.

The case went to trial on July 18, 1983. At trial, Langley, still insisting upon representing himself, nevertheless refused to remain in the courtroom and participate in the trial.[2] As a result, Langley was taken

1. Langley filed suit against the district court judge in federal district court alleging that the judge had exceeded the scope of his authority. After filing this suit in federal court, Langley sought to have the judge disqualify himself on the grounds of prejudice.

2. The transcript reflects the following exchange:
"THE COURT: Well, Mr. Langley, I'm going to go ahead and hold the trial, as you well know.
"DEFENDANT LANGLEY: Well, I object to it. Send me a slip, I'll go back to jail and you send me a slip and tell me what you did with it.
"THE COURT: Well, Mr. Langley, I'm telling you that your presence is required in here. You have elected to represent yourself.
"DEFENDANT LANGLEY: I don't intend to sit here. I intend to represent myself if I have a fair judge. But I haven't got a fair judge.

You have hung onto this case like a dog on a bone. You have denied all my pretrial motions. The only motion you granted me was the motion to wear my own clothes to the jury trial. You denied the motion to suppress, quash, dismiss. All of them without hearing them.
"One or two you heard. The moment you heard them you denied them. There is no way in the world I can get a fair trial in front of you. No way. I have filed two civil suits against you in the federal court. Two against him. You probably got them quashed some way or another.
"Any man that has been asked to disqualify himself as many times as you have should disqualify himself. But you're going to go ahead and prosecute in this case. Evidently you're trying to cover up for Mr. Johnson for introducing those false warrants.

from the courtroom into a nearby room where he was able to view and participate in the trial through the use of audio-visual equipment. *See* I.C.R. 43.1.[3] The record reflects that no legal advisor from the public defender's office was present at this trial.[4] A jury was picked, and the prosecution presented its case. Langley completely refused to present a defense, but instead made a motion for a continuance, which was denied. Ultimately, the jury returned a guilty verdict, and the trial court entered judgment and sentence.

Langley then appealed, asserting several errors at trial. The Court of Appeals found no merit in most of Langley's arguments, but held that Langley did not knowingly and intelligently waive his right to counsel. Thus, the court reversed Langley's conviction. *State v. Langley*, 109 Idaho 119, 705 P.2d 1074 (Ct.App.1985). Our review of the record causes us to conclude otherwise.

I

Langley, who asserted his constitutional right to represent himself at trial, now argues that his conviction should be overturned since he was not adequately informed of the dangers of self representation. We disagree and uphold the judgment of conviction and the sentence imposed.

It is basic to appellate practice that error in the trial court will not be presumed, but must be affirmatively shown by the appellant. *State v. Sharp*, 104 Idaho 691, 695, 662 P.2d 1135, 1139 (1983); *Mahaffey v. State*, 87 Idaho 233, 236, 392 P.2d 423, 424 (1964). *See also Carpenter v. Double R Cattle Co., Inc.*, 108 Idaho 602, 604, 701 P.2d 222, 224 (1985); *Gaither v. E.G. & G. Idaho, Inc.*, 106 Idaho 675, 676, 682 P.2d 628, 629 (1984). Langley, the appellant, has not affirmatively shown error here.

The record reflects that Langley repeatedly insisted on representing himself, agreeing to use a public defender only as a legal advisor. This relationship between Langley and the public defender, Laird Stone, was clarified during Langley's preliminary hearing in magistrate court:

"THE COURT: Be seated. Take up at this time, State of Idaho vs. William Langley, Case Number 25C–1077. This is the time set for Preliminary Hearing. Is the State ready to proceed?

"MR. ROSENTHAL: The State's ready, Your Honor.

"THE COURT: Is the Defendant ready to proceed?

"DEFENDANT LANGLEY: The Defense is ready, Your Honor.

"THE COURT: Okay. Call your first witness.

"MR. STONE: Judge ....

"DEFENDANT LANGLEY: Judge, I have some motions ....

"MR. STONE: .... I think before we take that up, we better take those motions up to ... at least clear up my status in the case at this point.

"THE COURT: Well, I assume, Mr. Langley, what you wanted was to have the Public Defender along in case you wanted to ask him any legal questions, but ...

"The warrants are false. So are the detectives. Now if you want to have a jury trial, go ahead and have it, but I don't want to be here."

**3. Rule 43.1. Use of electronic audio visual devices.**—Whenever the law or these rules require that a defendant in a misdemeanor or felony case be taken before a district judge or magistrate for a first or subsequent appearance, bail hearing, arraignment and plea in a misdemeanor case, or arraignment and plea of not guilty in a felony case, this requirement can be satisfied by the defendant's appearance before a district judge or magistrate either in person or by electronic audio visual devices in the discretion of the district judge or magistrate. Such audio visual device must operate so that both the defendant and a district judge or magistrate can see each other simultaneously and converse with each other. *Such additional hearings and proceedings may be conducted by audio visual devices as consented to by the defendant.* (Emphasis added.)

**4.** It is not clear from the record presented on appeal why a legal advisor was not present at trial.

"DEFENDANT LANGLEY: Yes, I want . . . .

"THE COURT: . . . you wanted to represent yourself, is that right?

"DEFENDANT LANGLEY: Merely as a—a legal advisor.

"THE COURT: Okay.

"DEFENDANT LANGLEY: I filed a motion to proceed in pro se, so that will clear him . . . .

"THE COURT: Okay."

In accord with his wishes, Langley represented himself at the preliminary hearing, questioning all the prosecution's witnesses and calling and questioning his own witnesses. The record reflects that the public defender participated in the hearing only in an advisory capacity.

Later, during Langley's arraignment in district court, Langley rejected the court's attempts to persuade him to have counsel appointed. The following exchange took place:

"THE COURT: The next case I'll take up is the State of Idaho, plaintiff, versus William A. Langley, Case No. 11538. Mr. Bailiff?

"Mr. Langley, apparently you were represented also by the public defender in the lower court; is that correct, sir?

"DEFENDANT LANGLEY: I represented myself pro se, Your Honor. I proceeded with the guidance of assistance of the public defender as a legal advisor.

"THE COURT: Well, then, I might ask you: What is your thinking in regard to the attorney in this court?

"DEFENDANT LANGLEY: Well, I intend to proceed pro se with the assistance of legal advisors from the public defender's office. Mr. Laird Stone has been assigned to me.

"THE COURT: You would like to continue that arrangement?

"DEFENDANT LANGLEY: Yes, sir.

"THE COURT: Well, I might advise you that I have been in this business a long time, and I have never yet found a person that has represented themselves very well pro se, and I think it's a very foolish idea to do so.

"DEFENDANT LANGLEY: I'm a fool for a client is what you mean.

"THE COURT: I think that's about it. Even I have an attorney and am in court over in a civil case in Payette, and I'm not representing myself.

"DEFENDANT LANGLEY: I would rather proceed pro se, Your Honor.

"THE COURT: Very well, then, I have advised you accordingly.

"DEFENDANT LANGLEY: Excuse me, Your Honor. I would like the assistance of an attorney as a legal advisor.

"THE COURT: Well, I'll give you that right, and the public defender is there. I hope you reconsider and change your mind in that regard. And to that extent, I'll reaffirm the public defender to represent you.

"DEFENDANT LANGLEY: No, I'll proceed pro se.

"THE COURT: Very well. . . . ."

The record also reflects that Langley's decision to represent himself was discussed several times during Langley's many court appearances. The minute entry from a May 12, 1983, motion hearing reflects that at this time the district court again advised Langley to allow his legal advisor to represent him. At that time Langley again articulated his desire to continue to represent himself *pro se*. A later minute entry, from the May 31, 1983, hearing at which the continuance was granted, reads, "The Court comments regarding appointment of counsel for further legal proceedings. The defendant informs court that he will continue pro se with comments."

The record also reflects that a pretrial motion hearing was held on July 7, 1983. The minutes of this hearing reflect that Langley called Laird Stone, the public defender serving as his legal advisor, as a witness. It is unclear what the substance of Stone's testimony was or why he was called to testify. However, the minutes of this hearing do contain the following entry: "The Court affirmed the trial date of July 18, 1983 at 9:00 A.M. Response by the Defendant regarding the refusal to attend

the trial. Comments by the Defendant regarding a Motion to Appoint Counsel Outside the Public Defenders Office. Response by the Court, informing the defendant that the public defenders office has not been appointed." The minutes do not reflect just what Langley meant, at this point in time, when he motioned for the appointment of outside counsel. No such motion is contained in the record. However, it is clear that Langley, by this point, had been instructed many times and was fully aware that by electing *pro se* representation he had assumed full responsibility for his own defense.

■ In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that an individual has a right to *pro se* representation. This right, conditioned upon a knowing and intelligent waiver of counsel, see *Faretta v. California*, 422 U.S. at 835, 95 S.Ct. at 2541, arises out of the United States Constitution. Specifically, the Court stated:

> "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.
>
> "The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists."

422 U.S. at 819–20, 92 S.Ct. at 2533–34, (footnotes omitted).

It was this right to *pro se* representation which Langley asserted when he insisted upon representing himself despite the district court's repeated efforts to persuade him otherwise. We will not now allow Langley, whose record indicates a well developed relationship with the criminal justice system,[5] to manipulate the system. As was noted by the Second Circuit, when it was presented with a case similar to this one, "Had [the judge] refused to allow [the defendant] to represent himself, there would doubtless have been a claim of error, persuasively fortified by the Supreme Court's recent decision in Faretta v. California (citation omitted), raising to a constitutional level the right to appear *pro se.*" *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 134 (2d Cir.1975), *cert. den.* 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976).

We remain unpersuaded that Langley's decision to represent himself was unknowing. The record contains only the minute entries from most of Langley's many court appearances. Thus, we are prevented from knowing the full extent of the district court's many attempts to persuade Langley to allow counsel to represent him. How-

**5.** Although Langley's presentence report is not contained in the record, at the sentencing hearing Langley's extensive record was discussed. The district court judge noted that Langley had been convicted of nine felonies and two misdemeanors and had been in and out of correctional institutions for forty years. Langley himself, at the sentencing hearing, blamed his arrest on his record, stating, "I found that my infamy has followed me from my younger record through the years, and I am a mark, and a target for young prosecutors and so forth."

ever, based even upon the record before us, we are unable to find that the district court's attempts to warn Langley of the dangers of self representation were inadequate. It must be kept in mind that Langley was not a first time offender, confronting the criminal justice system for the first time. Rather, Langley was a seasoned veteran of courtroom battles. We are cited to no controlling authority which would require the district court, faced with the circumstances of this case, to do more than it did.

▮ We also remain untroubled by the absence of Langley's legal advisor at the trial which commenced on July 18, 1983. It is difficult to perceive how the presence of Langley's legal advisor could have changed the outcome of the trial. Had the legal advisor been present, Langley's complete refusal to participate in his own trial would have left the advisor with no one to advise. It must be remembered that Langley, who insisted upon *pro se* representation, was the counsel of record, not the public defender's office. This distinction was repeatedly made clear during the hearings on the many pretrial motions.

Langley has not cited us to any authority indicating that a legal advisor must be present at trial, nor has our independent research revealed such authority. Langley clearly had many opportunities to consult with his legal advisor before the trial. Not only was the legal advisor present at all motion hearings, but many of Langley's pretrial motions were typed by the public defender's office, indicating close contact with the legal advisor. In these respects, the district court fully co-operated with Langley's request for advisory counsel. Langley repeatedly refused the appointment of counsel, instead asserting his *Faretta* right to *pro se* representation. Since it appears from the record that he had ample opportunity to consult with his legal advisor (who was functioning as an advisor, and no more), we find no error in the unexplained absence of the legal advisor, whom Langley refused to have appointed

as counsel, at the trial. Accordingly, we uphold the judgment of conviction.

## II

▮ Langley also contends that the district court erred in imposing a 15–year sentence, pursuant to I.C. § 19–2520, for the use of a firearm in the commission of the robbery. We disagree. In support of his argument, Langley relies upon a Court of Appeals opinion, *State v. Kaiser*, 106 Idaho 501, 681 P.2d 594 (1984), which held that an additional sentence, pursuant to I.C. § 19–2520, could not be imposed to enhance an indeterminate life sentence. However, on review to this Court, the Court of Appeals decision in *Kaiser* was overturned. In *State v. Kaiser*, 108 Idaho 17, 696 P.2d 868 (1985), this Court held that the clear language of I.C. § 19–2520 expresses a legislative intent that an additional penalty be imposed when a firearm is used in the commission of a crime, even when that additional penalty enhances an indeterminate life sentence. Accordingly, we find the district court did not err in sentencing Langley to a 15–year indeterminate sentence for the use of a firearm in the commission of the robbery pursuant to I.C. § 19–2520, which is to run consecutive to the indeterminate life sentence imposed for the robbery.

## III

Nor do we find merit in Langley's other allegations of error. Our review of the record indicates no irregularities in the extradition procedure. We also remain unpersuaded that the photographic lineup, initially used to identify Langley, was improperly suggestive or that an alleged pretrial confrontation between the two Molenaar employees, who later testified at trial, and Langley deprived Langley of a fair trial. As noted earlier, error will not be presumed on appeal; it must be affirmatively shown on the record by the appellant. Langley has not done that here.

DONALDSON, C.J., and SHEPARD, J., concur.

BISTLINE, Justice, dissenting.

I.

The Court of Appeals opinion, found at 104 Idaho 119, 705 P.2d 1674, thoroughly and competently addressed the issue which was presented to it. In doing so, it both properly and correctly applied precedential decision law of the Supreme Court of the United States, the Supreme Court of Idaho, the Supreme Court of Arizona, the Supreme Court of Nevada, the Ninth Circuit Court of Appeals, and two Washington courts of appeal. It also applied Idaho statutory provisions, and made mention of the Idaho Trial Judges' Manual. The Court of Appeals did not concern itself at all with the criminal charge that Langley was tried on, other than to note that Langley represented himself on a charge of armed robbery.

The lesson to be learned today is simply stated: When a majority of this Court decides to overturn a question-of-law decision of the Court of Appeals in a criminal case, it is important that no later than in the second paragraph the reader be told that the then suspect Langley was identified "as the man who held them at gunpoint, forced them to lie on the floor, handcuffed them, and threatened to 'blow off' their heads."

Having made that introduction, it then becomes an easy matter indeed to ignore the law which the Court of Appeals applied—*not* to the question of the alleged crime nor the character of the defendant— to the presented issue which was whether the trial court had properly ascertained that Langley was knowingly and intelligently waiving his right to be represented by counsel, as required by Idaho statutory law and, more importantly, the Constitutions of the United States and the State of Idaho, and constitutional case law of both jurisdictions.

The majority, in setting the stage in its second paragraph, also includes therein the advice that "Langley was 'no stranger' to the criminal system." And, as though important, mention is then made that he filed over 20 motions, and appeared in district court to argue orally at least ten times. All of which, if that does not suffice to point him out as an undesirable litigant, was augmented by his obstinacy in requesting and being granted a trial continuance. The clincher would come at trial itself, when he refused to perform as counsel *pro se*, and allowed as how he would rather be in Philadelphia, or, more accurately, "back in jail"—as the majority notes.

All of the foregoing had nothing to do with the question of law which was presented on the appeal, which the majority states on page 897, 719 P.2d p. 1157 "Langley ... argues that his conviction should be overturned since he was not adequately informed of the dangers of self-representation." That majority then turns to the dialogue which took place between the district judge and Langley at arraignment in district court, quoting exactly what is found at the opening of the Court of Appeals' opinion. At the bottom of page 898, 719 P.2d at p. 1158, the majority turns to *Faretta*, but only after pausing long enough to reflect upon reflections of court minutes which are "unclear"—although what is clear to the majority (and any other reader) that Langley knew that he "had assumed full responsibility for his own defense." Which is to add very little, if anything, to the question of what amounts to a valid waiver intelligently and knowingly made—which was the focus of the Court of Appeals' inquiry and decision.

A quotation from *Faretta* is inserted into the majority opinion for window dressing, so it may seem. The particular quotation falls abysmally short of addressing the issue, and seems to serve only as a supposed predicate that the majority "will not allow Langley, whose record indicates a well-developed relationship with the criminal system, to manipulate the system." One would think, however, that if anything, that history, p. 899, 719 P.2d p. 1159 n. 5, establishes that Langley's track record at running the gauntlet of the criminal system was nothing to write home about. Whether most, if not all, of those convic-

tions were uncounselled guilty pleas is a totally unknown fact. But, having entered the arena of surmise, the majority continues to beat the same conjectural drum:

Based even upon the record before us, we are unable to find that the district court's attempts to warn Langley of the dangers of self representation were inadequate. It must be kept in mind that Langley was not a first time offender, confronting the criminal justice system for the first time. Rather, Langley was a seasoned veteran of courtroom battles. We are cited to no controlling authority which would require the district court, faced with the circumstances of this case, to do more than it did.

P. 899, 719 P.2d at p. 1159.

The majority opinion stands for this much, and no more: If an accused "elects"[1] to represent himself, and so conducts himself so as to give the appearance of a not-too-smart obstructionist, notwithstanding being told by a judge that the judge is not attempting his own representation in a civil case, and continues to insist upon self-representation, the Idaho Supreme Court will hold that the district judge has fully and properly ascertained that the accused has knowingly and intelligently waived his right to assistance of counsel at trial.

The least the majority could do in consigning the Court of Appeals opinion to the trash heap, and making a shambles of the law in the process, would be to affirm that court's judgment on disposition of issues with which the majority does not take umbrage.

## II.

Grossly unfair to Langley is the majority opinion's characterizing him as a manipulator of the system, alluded to above. The complaint being made seems to be that Langley, who in district court insisted on self-representation, is to now be held estopped from asserting in his brief that:

This Appellant was not capable of representing himself upon the charges here

presented, and it was error to conclude otherwise and allow him to do so. The Sixth and Fourteenth Amendments guarantees that a criminal defendant in a State prosecution has a constitutional right to proceed without counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525 [45 L.Ed.2d 562] (1975). This right is also conferred to Appellant by the Constitution of the State of Idaho, Article 1, section 13, which states in part: "(a criminal defendant has the right) to have the process of the court to compel the attendance of witnesses in his behalf, and to appear and defend in person and with counsel."

However, when a defendant chooses to exercise his right to represent himself, pro se, he necessarily relinquishes many of the traditional benefits associated with the right to counsel. *Cf. Von Moltke v. Gilles;* [Gillies] 332 U.S. 708, 68 S.Ct. 316 [92 L.Ed. 309] (1948); *State v. McCabe,* 101 Idaho 727 [620 P.2d 300] (1980). But when any waiver of this right is made, the court must determine that such decision is knowingly and intelligently made. *State v. Ruth,* 102 Idaho 638 [637 P.2d 415] (1981); *State v. LePage,* 102 Idaho 387 [630 P.2d 674] (1981). As stated in *Von Moltke, supra:*

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—*whose life or liberty is at stake*—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, *a judge must investigate as long and as thoroughly as the circumstances of the case before him demand.* The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature

1. In the language of the district judge.

of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.*

This case graphically illustrates that a mere routine inquiry—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel. (Footnote omitted). *Id.* 332 U.S. pgs. 723–724, 68 S.Ct. pg. 323." (Emphasis added).

*See also: State v. Verna,* [9 Or.App. 620] 498 P.2d 793 (1972); *State v. Chavis,* [31 Wash.App. 784] 644 P.2d 1202 (1982).

Here, although Appellant has diligently sought the record of his waiver hearing, the record has not been reduced. *See: Rpts. Trans. pg. 126* (Notice of Appeal); *Motion to Augment the Record,* January 30, 1984; *Motion to Augment Record* March 13, 1984. This Court has held that "Upon appeal, appellant carries the burden of presenting such a record as to enable our review of the asserted errors. In the absence thereof we will not presume error." *State v. Sima,* 98 Idaho 643 [570 P.2d 1333] (1977). Under the circumstances presented here, Appellant submits that this per se rule may not be applied to him. Therefore, out of necessity, and in the absence of the record herein, Appellant asserts that no waiver hearing was ever held in this case.

This case presents a classic example of why the California and other state courts have required an examination into a defendant's intellectual capacity, including a psychiatric evaluation where appropriate,

before a trial judge makes the determination to allow a defendant to continue pro se, *cf. People v. Salas,* 77 Cal.App.3d 600, 143 Cal.Rptr. 755 (1978); *People v. Lopez,* 71 Cal.App.3d 568, 138 Cal.Rptr. 36 (1977). Each and every time Appellant appeared before the Court, he, preposterously presented arguments, not about the criminal case confronting him, but rather, the warrants upon which he was arrested in Utah and brought into Idaho. *See: Footnote 1, supra.*

The absence of a personal inquiry on the record will not of itself, necessarily require reversal; the record as a whole must demonstrate that the defendant knowingly and intelligently refused to accept counsel. *United States v. Bird,* 621 F.2d 989 (9th Cir.1980); *United States v. Gillings,* 568 F.2d 1307 (9th Cir.1978). *But see: United States v. Dujanovic,* 486 F.2d 182 (9th Cir. 1973) (stating that a court should not grant a defendant's request to proceed pro se without addressing the accused personally and determining on the record that the demand to waive counsel and proceed pro se is competently and intelligently made with understanding of the nature of the charge and the penalties involved). The record as a whole in this case discloses everything but an intelligent waiver. The repeated assertion of the warrant issue; the walking out and non-participation in his criminal trial; and, the incomprehension of the inevitable result of such actions, all unequivocally lead to the conclusion that Appellant was incapable of representing himself at every stage of his criminal trial.

Since the question ultimately is the *subjective* understanding of the Appellant rather than the quality or content of the explanation provided, the trial court should have questioned Appellant in a manner designed to reveal his *understanding,* rather than allowing Appellant to proceed in a quandry of "defective warrants" throughout his criminal proceedings with nay so much as simple questions requiring merely "yes" or "no" responses. *See: United States ex rel. Miner v. Erickson,* 428 F.2d 623 (8th Cir.1970). Under the circumstanc-

es here, the trial judge should have made a penetrating and comprehensive examination in order to properly assess that the waiver was made knowingly and intelligently. *United States ex rel. Martinez v. Thomas*, 526 F.2d 750 (2d Cir.1975). Although a lack of legal technical knowledge generally will not serve as a basis for denying assertion of the right to self-representation, *Faretta, supra* at 422 U.S. 836, 95 S.Ct. 2541, waivers of counsel have been held invalid where they were not intelligently or understandingly made due to factors indicating inability to comprehend the matters before the court. *Badger v. Cardwell*, 587 F.2d 968 (9th Cir.1978) (defendant merely told pro se representation would not be in his best interest); *United States ex rel. Martinez v. Thomas, supra,* (educational and social background); *People v. Barajas,* [81 Cal.App.3d 999] 147 Cal.Rptr. 195 (1978) (defendant merely told he would be treated as if he had counsel); *State v. Doss,* [116 Ariz. 156] 568 P.2d 1054 (Ariz.1977) (defendant under extreme stress); *People v. Salas, supra,* (defendant asserted assigned attorney was of no help and not needed); *People v. Lopez, supra,* (defendant not advised on record of dangers and disadvantages of self-representation); *State v. Bauer,* [310 Minn. 103] 245 N.W.2d 848 (Minn.1976) (defendant had paranoic distrust of everyone connected with judicial system); *State v. Tilley,* 548 S.W.2d 199 (Mo.App.1977) (court made no examination into defendant's awareness of elements of offense charged, possible defenses and mitigating circumstances); *Commonwealth v. Tyler,* [468 Pa. 193] 360 A.2d 617 (Pa.1976) (no penetrating and comprehensive examination of all circumstances was conducted); *See also:* 77 A.L.R.2d 1233, § 3 (1961) and the cases cited therein.

The Court in *Faretta* said a defendant should be made aware of the dangers and disadvantages of self-representation, so that the *record will establish* that "he know what he is doing and his choice is made with eyes open." *Id.* at 422 U.S. 835, 95 S.Ct. 2541. Even though each case is different, the trial courts should attempt to determine the subjective reasons for the defendant's refusal to accept counsel. A defendant may believe he will be denied any opportunity to speak for himself; that no appointed lawyer would zealously represent him at a State fee (*See: State v. McCabe, supra*); that a distrust of the judicial system necessitates a pro se appearance for a fair trial; he may even feel that appearance pro se may afford a later basis for reversal on appeal; that based upon television portrayals a criminal trial is a simple matter; that the jury would be sympathetic to a lay person who acts as David against the Goliath of the State; because of a blind faith in his innocence and the infallibility of the judicial system, or simply a desire to save money. In attempting to determine the reasons for a defendant's refusal of the assistance of counsel the trial judge is in a better position to discuss the defendant's fears and apprehensions while attempting to mitigate them.

It is submitted that this Court must not disregard the long term interest of the accused in having his or her guilt or innocence *fairly* determined. The accused should be allowed to weigh the advantages of counsel. The trial judge must maintain a position as an independent in the Sixth Amendment balance between a defendant who unequivocally asserts a desire to act on his own behalf and society's interest in ensuring the constitutional right to counsel is not denied under the guise of a valid waiver. *Only* when a defendant is competent in all respects should he be allowed to proceed pro se at the risk of conducting "his own defense ultimately to his own detriment." *Faretta, supra,* at 422 U.S. 834, 95 S.Ct. 2541. Conversely, where the Court, after thorough examination, determines the defendant is not competent to proceed under a waiver, the court has an affirmative duty to appoint counsel. *Id.*

The further fact that the trial court in this case appointed standby counsel for Appellant may not successfully be argued as mitigating the gross constitutional error committed in this case. He was in trial on another case the date of Appellant's trial.

As Judge Kane so aptly summarized in the case of *United States v. 1982 Audi*, 577 F.Supp. 1004 (D.C.Colo.1983), the trial court's actions herein demonstrate "such insouciance (that) suggests that we are fast approaching our own *gotterdammerung.*"

Appellant's Brief, pp. 13-20.

Langley obviously was not the author of the foregoing passage. Although it was signed by him, it is written in the third person by another inmate at the Idaho State Correctional Institution whose identity is well known to all of us—not only on this Court, but in the Idaho United States District Court as well, where he is reputed to have also served well his clients. The brief is of excellent quality, and oral argument presented in support of it undoubtedly would have aided this Court considerably. The case obviously is deemed to be of considerable importance, or else three members of this Court would not have granted one of our few orders allowing review of a final decision of the Court of Appeals.

Pursuing that bewilderment, I am surprised, and startled, to find that the Court entered an order precluding both parties from oral argument, supposedly under the provisions of I.C. § 19-2803, a 1977 enactment of which I concede having had no previous knowledge, and which declares that a "defendant" does not have any right to appear at oral argument on appeal unless so ordered by the Supreme Court. The statute does not purport to address the right or plight of a "*pro se* defendant" or a "*pro se* defendant's" legal adviser and brief writer. Not knowing yet what to make of this strange affair, at the least I find it passingly strange that such order was entered without my being afforded any vote.

As is usually so, there is more at stake here than just the fate of William Langley. As the brief written for him well points out, the district court did not at any time conduct a waiver hearing, and it did not conduct a competency hearing. Just one year ago, when this Court affirmed a summary dismissal of a convicted defendant's

*pro se* petition for post-conviction relief— the district court had entirely failed to inform him of his right to counsel as specifically required by statutory law, I.C. § 19–853—my dissenting opinion also discussed constitutional aspects of that failure as discussed in the *Faretta* opinions, drawing the conclusion that both the *Faretta* majority and minority recognized that courts have a duty to protect a defendant's Sixth Amendment rights:

> Those who take the time to carefully read both the majority and minority opinions will discover that the two opinions differ only in their view of whether the state has the authority to force a defendant to accept the·assistance of trained legal counsel. The majority would allow appointment of counsel against a defendant's wishes only after a hearing wherein it is determined that the defendant is not competent to conduct his own defense. The minority's view differs only in its conclusion that a defendant should at all times have a court-appointed attorney in order to insure a fair system of criminal justice under the mandate of the Sixth Amendment.

Phillips v. State, 108 Idaho 405, 410, 700 P.2d 27, 32.

The *Phillips* situation was no different than here:

> Moreover, the district court made no attempt to ascertain Phillips' competency to understand the nature of the proceeding he was undertaking and the dangers involved. Unlike *Faretta, supra,* where the trial court insisted on a hearing to determine competency, the record before us is clearly void of any attempt to provide a competency hearing for Phillips.

*Phillips, supra,* at 411, 700 P.2d at 33.

In footnote 2, p. 31 of *Phillips,* I pointed out that:

> At least on the average of two or three times a month this Court routinely, against my vote, grants motions of defense counsel to withdraw as counsel for appealing defendants. These motions are generally presented before assignments are made to the Court of Appeals. Hence, that court is probably more

plagued than this Court with appeal briefs and arguments which are not of the quality to be of much aid in seeking a fair and just resolution. This Court's failure to require that a competency hearing be conducted by a district court assuredly works the mischief of which Chief Justice Burger wrote in *Faretta, infra:*

> "There is nothing desirable or useful in permitting every accused person, even the most uneducated and inexperienced, to insist upon conducting his own defense to criminal charges. Moreover, there is no constitutional basis for the Court's holding, and it can only add to the problems of an already malfunctioning criminal justice system."

Although, as perceived by the *Faretta* Court, there is a constitutional basis in Idaho, art 1, § 13, the problems alluded to by the Chief Justice will be greatly ameliorated by requiring the competency hearing which the *Faretta* Court declared to be mandated by *Adams v. United States ex rel. McCann,* [317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)] *infra.* Moreover, some members of this Court might welcome the forewarning that pro se appellants in post-conviction cases would appear to have a constitutional right to present their own oral argument.

*Phillips, supra,* at 410 n. 2, 700 P.2d at 31–32 n. 2.

Since then, over my objection, the Court has allowed probably 30 criminal appellants to discharge their attorneys, or conversely, allowed their attorneys to withdraw, usually to end up going *pro se.* My objection, of course, has been that such waiver of the right to counsel is impermissible without first assigning a district court to ascertain competency of a defendant to represent himself. To no avail.

HUNTLEY, Justice, dissenting.

As I suspect is the case with all appellate judges and justices, I sense the public pressure to affirm convictions. However, we have been hired to respect and protect the integrity of the criminal justice system because such is fundamental to the ultimate protection of our democratic form of government and thus we should have the courage to withstand those pressures.

The majority opinion overrules the decision of the Court of Appeals without addressing the issue which was faced squarely by the Court of Appeals—perhaps this court avoids that issue because it cannot adequately deal with it.

The Court of Appeals opinion reads in part as follows:

> ▮ In the present case, the record indicates that the district judge *did not make a finding at any point in the record that Langley acted with full awareness of his rights and the consequences of a waiver.* Further the record fails to establish that the district court considered the applicable factors in the statute, such as Langley's education and the complexity of the crime involved. In addition the record fails to indicate that Langley fully understood the dangers and disadvantages of self-representation. *Faretta v. California, supra.*
>
> We hold that both the statute and case law taken together require that a trial court address the defendant personally and determine on the record that the demand to waive counsel is competently and intelligently made with an understanding of the nature of the crime and punishment involved. *See U.S. v. Dujanovic,* 486 F.2d 182 (9th Cir.1973). In determining whether the waiver of right to counsel was intelligently given, the district court must consider the particular facts in each case, as well as the factors enumerated by I.C. § 19–857 concerning the background of the defendant and make appropriate findings on the record.
>
> ▮ The appointment of standby counsel does not mitigate the district court's failure to examine Langley and make findings pursuant to I.C. § 19–857. It is permissible—indeed it is advisable—to appoint standby counsel to be present in the courtroom in the event that the defendant needs and requests assistance. *State v. Clayton,* [100 Idaho 896, 606 P.2d 1000] *supra.* In this case, Langley

did request standby counsel and such counsel was appointed to him. However, waiver of the right to counsel is required despite the presence of court appointed legal advisors for a defendant who wishes to proceed pro se. *State v. Barker*, 35 Wash.App. 388, 667 P.2d 108 (1983). Moreover, here, when the case came to trial, Langley's standby counsel was not present. The reasons for his absence are not disclosed in the record although Langley argues that the attorney was then involved in another trial. We suggest that the trial judge should have taken steps to assure that the appointed standby counsel would remain available if Langley was absent from the trial for any reason. This could have been communicated to Langley before the trial began. *See,* IDAHO TRIAL JUDGES MANUAL § 6.37 (revised September, 1979). Returning to the record in this case, we conclude that it does not demonstrate that Langley's waiver was made knowingly and intelligently. The conviction must be reversed and remanded for a new trial. (Emphasis in original).

The majority opinion neatly sidesteps the issue which is the foundation for the reversal by the Court of Appeals.

The argument for sustaining the decision of the Court of Appeals is well stated by the staff of the law library at the penitentiary which reads in part as follows at pp. 7–11.

Moreover, Respondent's presentation of the facts of this case (*Respondent's Brief at p. 11*), are inaccurate, incorrect and incredible. Respondent submits: "A defendant's refusal to accept the assistance of a lawyer is not a question of waiver, but rather the exercise of the choice between two different rights." *Id.* at p. 11. However, as the record herein clearly reflects, *Appellant did not refuse to accept the assistance of a lawyer.* His requests to have advisory counsel present with him were unequivocally clear:

DEFENDANT LANGLEY: I represented myself pro se, Your Honor. *I proceeded with the guidance of assist-*

*ance of the public defender as a legal advisor.*

DEFENDANT LANGLEY: *Well, I intend to proceed pro se with the assistance of legal advisors from the public defender's office. Mr. Laird Stone has been assigned to me.*

DEFENDANT LANGLEY: *Excuse me Your Honor. I would like the assistance of an attorney as a legal advisor. Decision pg. 2.* (Emphasis added).

The respondent's arguments upon the question of non-waiver or rather a choice between two rights (*Respondent's Brief at p. 11*), are specious. In its Brief presented to the Court of Appeals which consisted of a total of five paragraphs on this subject, the Respondent states:

The appellant demanded the right to represent himself, R. p. 10. The district court *ordered* a deputy public defender to be present at trial in case Langley should wish to consult with him. (Tr. May 12, 1983, p. 1). *Respondent's Brief on Appeal at p. 4.* (Emphasis added).

If the district court "ordered" a public defender to assist this Appellant at his trial upon very serious criminal charges, where was he at the time this trial commenced? Obviously, the appointment of a non-existent attorney was a meaningless exercise of futility.

However, the Ninth Circuit Court in *Harris,* also rejected the same assertions by the Government therein. In so doing, it stated:

There is the additional factor that an advisory attorney was appointed to assist Harris. It is possible that the advisory attorney fully informed him on these matters. However, nothing in the record so indicates.

Recently, in *United States v. Kimmel,* 672 F.2d 720, 722 (9th Cir.1982), we noted that the appropriate inquiry is what the defendant understood—not what the court said or what the court understood. In that case, we found the record was insufficient to make the determination and used the procedure of a limited remand to supplement the

record. The opinion related the facts in that case, as follows:

The district court did not explain on the record the risks of self-representation to Kimmel. In the absence of a specific waiver inquiry, we must conclude "the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." The record reveals that Kimmel was well-educated and literate. He also had been prosecuted several times before and, in at least one case, had represented himself without the assistance of an attorney. While this background information suggests that Kimmel appreciated the risks of self-representation, we need more details to conclude that he sufficiently understood them. For example, it would be helpful to know whether Kimmel was informed about the risks of self-representation when he represented himself previously. The existing record does not supply these details or other evidence that adequately supports a finding of an intelligent waiver.

*Kimmel,* 672 F.2d at 722 (citation omitted). In *Kimmel,* the existence of other court records could have revealed that the defendant understood the risks of self-representation. Indeed, in that case, the defendant had experience with self-representation. This could conceiveably justify an application of the Cooley exception.

*In this case, we have no such facts and there is no prospect of finding other records of proceedings that could appropriately be used to supplement the record. An after-the-fact inquiry of Harris as to what he knew or understood, or an inquiry as to what he was advised by his counsel, would reverse the very procedure that should be followed. Thus, a limited remand is not appropriate in this case, and we therefore reverse and remand for a new trial.* Harris, supra at pp. 325–326 [683 F.2d 322] (Emphasis added).

Respondent's contentions that Appellant Langley was "an experienced criminal" [*Respondent's Brief at p. 71*], were not before the Court of Appeals, nor are they properly before this Court. The record does not contained [sic] any such *facts.* Respondent's Petition presently before this Court is nothing more, nor less, than a clever procedural gambit or manipulation of the Appellate Rules based upon the presentation of erroneous semantics that are designed to metamorphose the facts upon which the Court of Appeals correctly decided this case. The Decision of the Court of Appeals is sustainable upon a virtual plethora of authority, all of which appears to be directly on point to the proper issue: *See e.g.: Bement v. State,* 91 Idaho 388 [422 P.2d 55] (1966); *Cohen v. State,* [97 Nev. 166] 625 P.2d 1170 (Nev.1981); *State v. Chavis,* [31 Wash.App. 784] 644 P.2d 1202 (Wash. 1982); *People v. Lucero,* [200 Colo. 335] 615 P.2d [660] (Colo.1980); *State v. Fayle,* [134 Ariz. 565] 658 P.2d 218 (Ariz. 1982); and last but not least, *United States v. Dujanovic,* 486 F.2d 182 (9th Cir.1973). Further support is garnered from the federal appellate court of which Idaho is a part: *See e.g.: United States v. Saadya,* 750 F.2d 1419 (9th Cir.1985); *United States v. Harris, supra; United States v. Crowhurst,* 596 F.2d 389 (9th Cir.1979); *United States v. Aponte,* 591 F.2d 1247 (9th Cir.1978); and, *United States v. Gillings,* 568 F.2d 1307 (9th Cir.1977).

This Court's decision in *State v. McCabe,* 101 Idaho 727, 620 P.2d 300 (1980), is not inconsistent with the Court of Appeal's Decision herein. Therein, as is aptly pointed out by Respondent [*Respondent's Brief at p. 13*]:

*The record clearly demonstrat[ed] that the trial judge advised McCabe of the dangers of attempting to represent himself and present his defense in a criminal trial.* When McCabe indicated he was adamant in his decision, *the trial court attempted to persuade McCabe to allow counsel to sit with him and advise him during the course of the trial. That suggestion was also rejected by McCabe. Id.* at p. 729 (Emphasis added).

Here however, the record clearly reveals that the trial court *did not* "repeatedly and meticulously" attempt to dissuade Appellant Langley from self-representation, and instead of rejecting court-appointed counsel assistance, Appellant specifically requested that it be provided to him. Where this counsel was on the day of his trial is not disclosed by the record before this Court. *See, Affidavit of Laird Stone,* filed contemporaneously herewith.

It is respectfully submitted that Respondent's application to this Court and its accompanying request to overturn a conscientious and comprehensive discussion by Idaho's Court of Appeals of the error committed by the trial court herein, should appropriately be DENIED. The Appellate Court's Decision should in all respects be AFFIRMED, and Respondent's Petition dismissed as improvidently granted. (Emphasis in original).

If the majority can search this record and find a factual and legal basis which overcomes the rationale of the Court of Appeals decision and the issues raised in Langley's brief, I would certainly come on board and affirm the conviction. If we are unable to do that, I would suggest we show a little more concern for the integrity of the judicial process.

Additionally, this Court granted Langley leave to file a supplemental brief and issue on appeal, which issue he presents as follows:

ISSUE ON APPEAL

Whether the appellate delay experienced by incarcerated criminal appellants [sic] in the State of Idaho is a violation of the due process of law and equal protection of the law and therefore contrary to the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 2 and 13 of the Constitution of the State of Idaho.

Langley's supplemental brief computes (correctly or incorrectly) that there have been 53.4 months of delay in processing the appeal not chargeable to him. He makes the argument that the legislature has in-

vaded the province of the judicial branch of government in providing a statute which prohibits bail pending an appeal whenever a sentence in excess of five years has been imposed. Again, the majority handles this issue on appeal by pretending it has not been raised.

BISTLINE, J., concurs.